498 A.2d 939

Albert A. MATULEVICH, Jr., Appellant,

v.

Joseph E. MATULEVICH, Sr.

Albert A. MATULEVICH, Jr., Appellant,

v.

Stephen PERCHAK and Joseph E. Matulevich, Sr.

Superior Court of Pennsylvania.

Argued May 21, 1985.

Filed Sept. 18, 1985.

Duncan J. MacCallum, Philadelphia, for appellant.

Anthony B. Panaway, Wilkes-Barre, for Matulevich, appellee.

William F. Anzolone, Wilkes-Barre, for Perchak, appellee.

Before McEWEN, DEL SOLE and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal from the trial court's denial of appellant's motion for a new trial. Appellant, the plaintiff below, filed an action in trespass against appellees, Joseph E. Matulevich, Sr. and Stephen Perchak, for injuries he suffered in a hunting accident. The case was tried before a jury which found no negligence on the part of either appellee and also found no comparative negligence on the part of appellant. Post-trial motions were filed and denied. Judgment was entered on the verdict, and this appeal followed.

As succinctly stated by the trial court, the pertinent facts are as follows:

The incident which gave rise to the instant law suit occurred on November 28, 1977. On that date, at approximately 4:00 P.M., a party of twenty-five hunters assembled in a wooded area of lower Luzerne County to conduct what is known as a drive, the purpose of which was to flush out white tailed antlered deer. The drive's direction was from east to west and the individual drivers were aligned from south to north. Immediately preceding the occurrence in question, the specific drivers and their relative positions were as follows: Joseph E. Matulevich, Sr., was the southernmost driver. To his immediate north and right was Steve Perchak, followed by Albert A. Matulevich, Jr., Robert J. Matulevich and Billy Sterling. It is undisputed that at approximately 4:30 P.M., a deer appeared to the north and in front of the line

of drivers. This animal ran in a southerly direction and crossed through the line at a point between Mr. Perchak and Albert Matulevich. Shortly afterwards, a bullet from Joseph Matulevich's rifle struck Albert Matulevich in the upper left chest.

Lower Court Opinion, at 2.

Appellant's first assignment of error, that the jury's verdict was against the weight of the evidence, has not been preserved for our review. The lower court properly refused to address this issue because it had been presented in appellant's post-verdict motion in boilerplate form. *Carnicelli v. Bartram*, 289 Pa.Super. 424, 433 A.2d 878 (1981). Appellant now attempts to circumvent this obstacle by providing us with numerous arguments which are intended to support this claim. We, however, may not consider them, as it is now the established policy of this court not to entertain claims which parties have failed to specify in their post-verdict motions. *Cherry v. Willer*, 317 Pa.Super. 58, 463 A.2d 1082 (1983).[1]

Likewise, appellant's argument that the lower court erred in its jury instructions regarding appellees' possible liability should the jury find that the bullet which struck appellant had ricocheted before hitting him, is also waived. The trial court gave its instruction on this and other points, and then asked counsel if they had any objections. Appellant's counsel answered in the affirmative, objecting to, *inter alia*, the charge on the ricochet possibility. The court re-instructed the jury and appellant's counsel indicated he was satisfied. After the jury had retired to begin deliberations, appellant's counsel requested they be brought back for further instructions. We agree with the trial court that appellant failed to timely and specifically object to the jury

---

1. In *Cherry v. Willer*, 317 Pa.Super. 58, 463 A.2d 1082 (1983), this court put the bar on notice of our waiver policy. We addressed the substantive claims in *Cherry*, however, because in that case post-verdict motions had been submitted before *Carnicelli v. Bartram*, 289 Pa.Super. 424, 433 A.2d 878 (1981), was filed. *Carnicelli* was filed on July 12, 1981; the post-verdict motions in the instant case were filed in December of 1981.

charge. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); *Tyus v. Resta*, 328 Pa.Super. 11, 476 A.2d 427 (1984).

■ Appellant next claims the trial court erred by not instructing the jury on his requested charge based on Restatement of Torts (Second) § 519,[2] which deals with abnormally dangerous activities. Our research, as well as that of the lower court, has failed to unearth any authority which applies § 519 to circumstances similar to those in the instant case. *See generally*, Restatement of Torts (Second) § 520 (factors determining abnormally dangerous activities). We agree with the lower court that the handling of firearms, in this case high powered rifles, is an activity requiring extraordinary care, the want of which imposes liability based upon negligence. It is not an activity which imposes liability *irrespective* of negligence. *Id.* § 519, Comment (d); *see also, Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957) (standard of care in handling firearms). The trial court therefore properly rejected appellant's requested charge.

■ Appellant also would have us find error in the trial court's jury instructions regarding the relevant standard of care required of an individual who handles a loaded firearm. The lower court instructed the jury that the standard was one of extraordinary care, relying on *Kuhns v. Brugger, supra*, and *Everette v. City of New Kensington*, 262 Pa.Super. 28, 396 A.2d 467 (1978).[3] Essentially, it is appellant's

---

**2.** That section of the Restatement provides:
   **General Principle**
   (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
   (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

**3.** All references in this opinion to *Everette v. City of New Kensington*, 262 Pa.Super. 28, 396 A.2d 467 (1978), are to the Opinion In Support of Affirmance, written by then Judge, now President Judge, Spaeth. Because the Opinion In Support of Reversal, written by the late Judge Price, addresses the standard of care required of a police officer,

contention that the law of this Commonwealth would hold the possessor of a firearm strictly liable for any injury caused by the discharge of his gun, unless that discharge was unavoidable.

It is true, of course, that *Kuhns* contains the statement upon which appellant bases his contention, namely: "A person handling or carrying a loaded firearm in the immediate vicinity of others is liable for its discharge, even though the discharge is accidental and unintentional, provided it is not unavoidable." *Kuhns v. Brugger, supra*, 390 Pa. at 338, 135 A.2d at 400. However, it is also true that *Kuhns* instructs that "any person having [a firearm] in his possession or using it is bound to *exercise extraordinary care*." *Id.* (emphasis added). Moreover, the language relied upon by appellant is followed by the clear directive that whenever an individual deliberately points a loaded gun at another and discharges it, "a *prima facie* case of *negligence* is established." *Id.*, 390 Pa. at 338–39, 135 A.2d at 400–01 (emphasis added). Finally, *Kuhns* also approvingly cites a hunting case in which our supreme court had earlier held that the task for the jury was to determine whether the defendant had exercised due care under the circumstances. *Id., citing, Winans v. Randolph*, 169 Pa. 606, 32 A. 622 (1895).

We think the proper reading of *Kuhns* refutes appellant's contention. Our supreme court did not establish a form of strict liability in firearms cases, but rather sought to explain that, when someone possesses a loaded firearm, the reasonable care required of him or her under the circumstances is extraordinary care. *Everette v. City of New Kensington, supra; see generally*, Annot., 26 A.L.R.3d 561. Our review of the entire charge given by the trial court convinces us that the court properly applied the law regarding the handling of firearms as posited in *Kuhns* and *Everette*. We, therefore, reject appellant's claim.

rather than a civilian, we believe the negligence standard set forth by Judge Spaeth supplies the standard applicable in this case.

█ Appellant's remaining claim of error is that the lower court improperly excluded certain expert testimony.[4] Our review of the record and the pertinent case law satisfies us that the trial court did not abuse its discretion in excluding the expert's testimony. We believe that once the configuration of the hunting drive, which all parties agree was an acceptable method of hunting, was explained to the jury, they were perfectly able to evaluate the reasonableness of the parties' conduct without the aid of an expert. *Kubit v. Russ*, 287 Pa.Super. 28, 429 A.2d 703 (1981). We therefore find no merit to appellant's claim.[5]

Order affirmed.

4. The trial court stated that appellant had never offered the witness, Pennsylvania Game Conservation Officer Robert W. Nolf, as an expert in his offer of proof. While appellant never specifically stated in his offer that Nolf was an expert, we note that a general explanation was made as to Nolf's proposed testimony. Appellant also listed Nolf as an expert in his answers to appellees' interrogatories. We shall, therefore, proceed as the trial court did in its opinion, to consider Nolf as having been properly offered as an expert.

5. We do not perceive any conflict between our holding here and the plurality opinion of our supreme court in *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981). In *Rutter*, the court decided that the trial court erred in excluding the expert testimony of a former football coach who would have testified as to the proper safety standards required of allegedly negligent high school football coaches conducting summer football practice. Appellant, in the instant case, attempted to use the expert's testimony to establish the standard of care required of hunters aligned in a line of "drivers." However, in *Rutter*, without the testimony of the coach, the jury would be unaware of how one safely conducts summer football practices. In the instant case, the way in which hunters go about a "drive" was adequately presented by Nolf in his recreation of the incident and the events leading up to it, which he based on his investigation of the accident. Having set the stage, Nolf was then asked what the standard of care was. (N.T., December 7, 1981, at 21–71). The trial court then sustained appellees' objection, and refused to allow Nolf to testify as to this point. We believe this was proper for, as we stated above, the standard of care in hunting and firearms cases is reasonable care under the circumstances, a standard to be determined solely by the jury. *Winans v. Randolph*, 169 Pa. 606, 32 A. 622 (1895); *Everette v. City of New Kensington, supra.*