654 A.2d 535

**Jonathon STEWART, Appellant,**

v.

**Martin MOTTS, II, t/d/b/a Mott's Radiator, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1994.

Decided Feb. 15, 1995.

■■■■■■■■■■■■■■■■■■■■■■■■■

598

Ronald K. Mishkin, for J. Stewart.

William G. Ross, G. Christopher Parrish, Marvin O. Schwartz, for M. Motts.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

MONTEMURO, Justice.

Appellant, Jonathon Stewart, appeals from an order and memorandum opinion of the Superior Court affirming a judgement of the Court of Common Pleas of Monroe County following a verdict in favor of appellee, Martin Motts, in this action for personal injuries, 434 Pa.Super. 709, 641 A.2d 1238.

The sole issue presented before us is whether there exists a higher standard of "extraordinary care" for the use of dangerous instrumentalities over and above the standard of "reasonable care" such that the trial court erred for failing to give an instruction to the jury that the Appellee should have used a "high degree of care" in handling gasoline. Because we believe that there is but one standard of care, the standard of "reasonable care", we affirm.

The pertinent facts of this case are simple and were ably stated by the trial court:

On July 15, 1987, Plaintiff, Jonathon Stewart, stopped at Defendant, Martin Motts' auto repair shop and offered

assistance to the Defendant in repairing an automobile fuel tank. In an effort to start and move the car with the gasoline tank unattached, the Plaintiff suggested and then proceeded to pour gasoline into the carburetor. The Defendant was to turn the ignition key at a given moment. While the exact sequence of events was contested, the tragic result was that the car backfired, caused an explosion and resulted in Plaintiff suffering severe burns to his upper body. On October 8, 1992, following a two day trial, a jury returned a verdict for the defendant thus denying the Plaintiff's claim for damages.

*Stewart v. Motts*, No. 52 Civil of 1988, slip op. at 1 (Court of Common Pleas of Monroe County, Dec. 18, 1992).

The only issue raised before this Court is the refusal of the trial court to read Stewart's requested point for charge No. 4. This point for charge reads:

We are instructing you that gasoline due to its inflammability, is a very dangerous substance if not properly handled. Therefore, it is incumbent on Mr. Stewart to use care in pouring the gasoline into the motor vehicle. It is also the duty of Mr. Motts to use care in starting the machine to see that the vehicle started without any risk of harm to anyone, particularly Mr. Stewart. The backfiring of engines without the air filter on them does occur. Both Motts, and Stewart, realized, or should have realized the dangerous nature of this substance, and knew, or should have known that the engine may backfire, and/or that the gas may ignite, and burn. With an appreciation of such danger, and under conditions where its existence reasonably should have been known, there follows a high degree of care which circumscribes the conduct of everyone about the danger, and whether the parties, Motts, t/a Motts Radiator, and Stewart, acted as reasonable men under the circumstances is for you the jury to decide. *See Konchar v. Cebular*, 333 Pa. 499, 3 A.2d 913 (1939).

The trial court denied this point of charge finding that it was "cumulative with respect to the standard charge given by the Court...." *Stewart*, slip op. at 3. In this appeal, Stewart

argues that the trial court erred in failing to read point of charge No. 4 to the jury because Pennsylvania law applies an "extraordinary" or "heightened duty of care" to those employing a dangerous agency.

■ We begin our discussion by reaffirming the principle that there is but one standard of care to be applied to negligence actions involving dangerous instrumentalities in this Commonwealth. This standard of care is "reasonable care" as well stated in the Restatement (Second) of Torts:

The care required is always reasonable care. The standard never varies, but the care which it is reasonable to require of the actor varies with the danger involved in his act and is proportionate to it. The greater the danger, the greater the care which must be exercised. . . .

Restatement (Second) of Torts § 298 comment b (1965).

This comment goes on to say that where the reasonable character of an actor's conduct is in question "its utility is to be weighed against the magnitude of the risk which it involves." *Id.* Thus, if an act involves risk of death or bodily injury, "the highest attention and caution are required. . . ." Therefore, the comment concludes, "those who deal with firearms, explosives, poisonous drugs or high tension electricity are required to exercise the closest attention and the most careful precautions . . ." *Id.*

Properly read, our cases involving dangerous agencies reaffirm these well accepted principles found in the Restatement. In *Konchar v. Cebular,* 333 Pa. 499, 3 A.2d 913 (1939), a case relied upon heavily by appellant in the case at bar, the plaintiff drove into a gas station and ordered a gallon of gasoline. The defendant began pumping gas into the motorcycle, but when three quarters of a gallon was placed in the tank, the gasoline overflowed and ran into the hot cylinders of the engine. The plaintiff, sitting on the motorcycle, was burned when the gasoline exploded. In the subsequent lawsuit for personal injuries, the jury returned a verdict to the defendant. The plaintiff claimed that the trial court erred in sending the question of his contributory negligence to the jury. In decid-

ing the case, this Court noted that gasoline was a dangerous substance requiring a "high duty of care." *Konchar*, 333 Pa. at 501, 3 A.2d at 914. We affirmed, holding that, "[i]t was for the jury to decide whether, under all of the circumstances, [the plaintiff] had acted as a reasonably prudent man." *Id.* Thus, we recognized that the question of the plaintiff's contributory negligence was to be determined using the reasonable care standard in light of the particular circumstances of the case. One such circumstance, we acknowledged, was that gasoline, a dangerous substance, was involved requiring that the reasonably prudent person exercise a higher degree of care under these circumstances. Taken in context, our statement that the plaintiff was under a "high duty of care" did nothing more than reaffirm the general principle that the care employed by a reasonable man must be proportionate to the danger of the activity.

Similarly, in *Fredericks v. Atlantic Refining Co.*, 282 Pa. 8, 127 A. 615 (1925), the plaintiff pulled into the station and requested gasoline. He was handed the hose and inserted it in the opening. When the valve failed to stop the flow, he called for the attendant to shut off the pump. Instead, the attendant yanked the hose out of the plaintiff's hands causing gasoline to be thrown all over. The gasoline caught fire, severely burning the plaintiff. We affirmed the trial court finding that the plaintiff had sustained his claim of negligence. In affirming, our Court stated the general principle that "[n]egligence is absence or want of care under the circumstances." *Fredericks*, 282 Pa. at 13, 127 A. at 616. We found that "a higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business which involve little or no risk." *Id.* Ultimately we held that "[n]o absolute standard can be fixed by law, but every reasonable precaution suggested by experience and the known danger ought to be taken." *Id.* We closely followed the reasoning of *Fredericks* in *MacDougall v. Pennsylvania Power & Light*, 311 Pa. 387, 166 A. 589 (1933) (electricity as a dangerous agency); *Pryor v. Chambersburg Oil & Gas Co.*, 376 Pa. 521, 103 A.2d 425 (1954) (gasoline as a dangerous

agency). We do not believe that these cases created a heightened or extraordinary standard of care above and beyond the standard of reasonable care for handling dangerous agencies. When we referred to a "higher degree of care" in these cases, we were not creating a second tier of "extraordinary care" over and above ordinary or reasonable care. Instead, we were simply recognizing the general principle that under the reasonable care standard, the level of care must be proportionate to the danger involved. Our use of the language "higher degree of care" merely stated the common sense conclusion that the use of a dangerous agency would require the reasonably prudent person to exercise more care. In fact these cases rejected any formalistic higher standard of care in holding that "no absolute standard of care [could] be fixed by law."

Admittedly, this notion of a heightened level of "extraordinary care" for the handling of dangerous agencies has crept into our jurisprudence. In *Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957), this Court considered the proper standard of care for negligence involving a handgun. The defendant in this case was a grandfather who had left a loaded handgun in an unlocked dresser drawer. While alone in the house, his grandchild found the gun and inadvertently shot another child. We affirmed the trial court's finding that the grandfather was negligent for permitting a highly dangerous instrumentality to be in the place where a child could come into contact with it. In so affirming, we found that the possession of a loaded handgun placed upon the defendant the duty of, "exercising not simply ordinary, but extraordinary care so that no harm might be visited upon others." *Kuhns*, 390 Pa. at 344, 135 A.2d at 403. This language in *Kuhns* on its face unfortunately suggests that this Commonwealth recognizes a separate standard of care, "extraordinary care", for dangerous instrumentalities above and beyond "ordinary care." We reject this suggestion. We note that the *Kuhns* Court adopted the above-quoted language without citation to or consideration of this Court's previous cases involving dangerous agencies or the Restatement (Second) of Torts. Since the *Kuhns* Court

did not specifically overrule any of these previous cases, we choose to interpret *Kuhns* consistent with *Fredericks, Konchar, MacDougall,* and *Pryor.* We note that the *Kuhns* Court explained:

We are not called upon to determine whether the possession of other instrumentalities or objects.... would impose the same degree of care under similar circumstances; we are simply to determine the degree of care imposed upon the possessor of a loaded pistol, a weapon possessing lethal qualities, under the circumstances.

*Kuhns,* 390 Pa. at 344, 135 A.2d at 403.

This language strongly suggests that the *Kuhns* Court did not create a standard of "extraordinary care" for all dangerous instrumentalities as advocated by the appellant. Instead, we believe that the *Kuhns* Court considered the danger of an unattended hand gun under the circumstances of this case and fashioned a standard of care proportionate to that danger. This was the conclusion of Judge Spaeth in the Opinion in Support of Affirmance in *Everette v. City of New Kensington,* 262 Pa.Super. 28, 396 A.2d 467 (1978). Judge Spaeth considered our opinion in *Kuhns* and explicitly rejected the argument that it created a standard of "extraordinary care" over and above the standard of reasonable care. In *Everette,* the Dissent argued that *Kuhns* imposed a higher standard of "extraordinary care" in situations in which a civilian possesses a firearm. *Everette,* 262 Pa.Super. at 41, 396 A.2d at 474 (Price J., dissenting). Judge Spaeth rejected this argument, stating:

It depends upon, and echoes, the mistaken supposition that there is a 'higher standard' of 'extraordinary care', in contrast to a lesser standard of 'reasonable care.' As *Kuhns* and the cases it cites hold, there is no such hierarchy of standards; to repeat: for a person who possesses a loaded firearm, 'extraordinary care' is 'reasonable care.'

*Id.* at 33, 396 A.2d at 469–70.

We agree with Judge Spaeth's well-reasoned interpretation

of *Kuhns.*[1]

In summation, this Commonwealth recognizes only one standard of care in negligence actions involving dangerous instrumentalities—the standard of reasonable care under the circumstances. It is well established by our case law that the reasonable man must exercise care in proportion to the danger involved in his act. *See MacDougall,* 311 Pa. at 396, 166 A. at 592 ("Vigilance must always be commensurate with danger. A high degree of danger always calls for a high degree of care."); *Lineaweaver v. John Wanamaker Philadelphia,* 299 Pa. 45, 49, 149 A. 91, 92 (1930) ("The care required increases with the danger."). Thus, when a reasonable man is presented with circumstances involving the use of dangerous instrumentalities, he must necessarily exercise a "higher" degree of care proportionate to the danger. Our case law has long recognized this common sense proposition that a reasonable man under the circumstances will exert a "higher" degree of care when handling dangerous agencies. *See Pryor,* 376 Pa. at 526, 103 A.2d at 427 (a "higher degree of care" imposed on persons dealing with gasoline); *Konchar,* 333 Pa. at 501, 3 A.2d at 914 (a "high duty of care" required for the handling of gasoline); *MacDougall,* 311 Pa. at 393, 166 A. at 591 (a "higher degree of care and vigilance" required for the handling of electricity);

1.  We also note that language suggesting a standard of "extraordinary care" can be found in *Matulevich v. Matulevich,* 345 Pa.Super. 507, 498 A.2d 939 (1985). In *Matulevich,* the Superior Court held, "[w]e agree with the lower court that the handling of firearms ... is an activity requiring extraordinary care." *Id.* at 511, 498 A.2d at 941. However, the issue before the court in *Matulevich* was whether the trial court erred in not instructing the jury that a possessor of a gun was strictly liable for any injury he caused. The Superior Court rejected the argument that the law of strict liability applied and affirmed the trial court's instruction that the standard was one of "extraordinary care." Thus, the issue of whether the proper standard was reasonable care or extraordinary care was not argued before the court nor questioned by any of the parties. Therefore, this case properly stands for the proposition that accidents involving firearms are to be governed not by strict liability principles, but by negligence principles. This case did not establish "extraordinary care" as the proper standard. Rather, it merely accepted *arguendo* the standard applied by the trial court and unquestioned by the parties as the correct standard.

and *Fredericks,* 282 Pa. at 13, 127 A. at 616 (a "higher degree of care" required for the handling of gasoline).

With these principles in mind we must next examine the jury instructions in this case. In examining these instructions, our scope of review is to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. *Williams v. Philadelphia Transportation Company,* 415 Pa. 370, 374, 203 A.2d 665, 668 (1964). Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. *Glider v. Com. Dept. of Hwys.,* 435 Pa. 140, 151–52, 255 A.2d 542, 547 (1969). A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." *Voitasefski v. Pittsburgh Rys. Co.,* 363 Pa. 220, 226, 69 A.2d 370, 373 (1949); A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. *Sweeny v. Bonafiglia,* 403 Pa. 217, 221, 169 A.2d 292, 293 (1961); *Giorgianni v. DiSanzo,* 392 Pa. 350, 356, 140 A.2d 802, 805 (1958). In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety. *McCay v. Philadelphia Electric Company,* 447 Pa. 490, 499, 291 A.2d 759, 763 (1972).

Reviewing the charge as a whole, we cannot conclude that it was inadequate. The trial judge explained to the jury that negligence is "the absence of ordinary care which a reasonably prudent person would exercise in the circumstances here presented." Transcript of Testimony 10/7/92 at 158. The trial judge further explained:

It is for you to determine how a reasonably prudent person would act in those circumstances. Ordinary care is the care a reasonably prudent person would use under the circumstances presented in this case. It is the duty of every

person to use ordinary care not only for his own safety and the protection of his property, but also to avoid serious injury to others. What constitutes ordinary care varies according to the particular circumstances and conditions existing then and there. The amount of care required by law must be in keeping with the degree of danger involved.

*Id.* at 158–59.

The trial judge essentially repeated these instructions in affirming appellee's point of charge number 8. This point of charge explained that "[w]hat is required of a reasonably prudent man is that he exercise care for his safety according to the circumstances." *Id.* at 173. This point of charge further explained that "[w]hen he knows that he is undertaking any activity of danger, his care must be commensurate with that danger." *Id.*

We find that this charge, when read as a whole, adequately instructed the jury. The charge informed the jury that the proper standard of care was "reasonable" or "ordinary" care under the circumstances in accordance with the law of this Commonwealth. The charge properly instructed the jury that the level of care required changed with the circumstances. The charge also informed the jury that the level of care required increased proportionately with the level of danger in the activity. We find nothing in this charge that is confusing, misleading, or unclear. From these instructions, the jury had the tools to examine the circumstances of the case and determine that the defendant was required to exercise a "higher degree of care" in using the dangerous agency of gasoline.

Nor do we believe that the failure of the trial judge to include the plaintiff's requested jury point for charge No. 4 was an omission constituting "fundamental error." Plaintiff's requested point for charge stated that the defendant was required to use a "high degree of care" in employing the dangerous agency of gasoline. As discussed *supra*, there is no standard of heightened or "extraordinary care" in this Commonwealth that would entitle the plaintiff to this instruction as a matter of law. We do not believe that the phrase "high

degree of care" found frequently in our case law has any talismanic properties requiring that it always be used in instructing the jury on the standard of care in cases involving dangerous agencies or instrumentalities. We believe it more important that the jury be instructed on the proper standard of care, reasonable or ordinary care under the circumstances, and the requirement that reasonable care is care proportionate to the danger of the activity. This was clearly done in the instant case.

Appellant argues that the language in his point for charge was nearly identical to Pennsylvania Suggested Standard Civil Jury Instruction 3.16 which sets forth the standard of care to be employed on inherently dangerous instrumentalities. PSSCJI 3.16 provides that anyone using a dangerous instrumentality is "required by law to use the highest degree of care practicable." [2] Assuming the applicability of this instruction to the case at bar, we find nothing in it inconsistent with our holding today. The "highest degree of care practicable" is simply another way of phrasing reasonable or ordinary care under the circumstances. We note that this standard jury instruction and point of charge No. 4 are completely consistent with our law. In fact, the use of such an instruction may very well have made the issue clearer to the jury. However, our standard of review is not to determine whether the jury had the best or clearest instructions, but whether they had adequate instructions. We find the jury instructions given in this case to be adequate. The trial judge rejected the plaintiff's point for charge No. 4 as "cumulative" of other jury instructions. We find no abuse of discretion or error of law on the part of the trial court in making this determination.

For the reasons set forth above, we affirm the order of the Superior Court.

**2.** PSSCJI 3.16 states in full:

Anyone who supplies or uses an inherently dangerous instrumentality, such as the high voltage current (acids, corrosives, explosives) provided (supplied) (used) by the defendant in this case is required by law to use the highest degree of care practicable to avoid injury to everyone who may be lawfully in the area of such activity.