IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherod York,                          :
                                      :
              Appellant               :
                                      :
       v.                             : No. 626 C.D. 2022
                                      : Argued:  June 5, 2023
Abdel Kanan and Walter Jackson        :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION
BY JUDGE WOJCIK                                    FILED:  July 13, 2023


        Sherod York (York) appeals from the order of the Court of Common Pleas of Philadelphia County (trial court) that denied York's motion for post-trial relief and confirmed the jury's verdict in favor of Abdel Kanan (Officer Kanan) and Walter Jackson (Officer Jackson), who were employed as City of Philadelphia police officers (together, Officers).  York brought a civil suit against the Officers alleging false arrest and malicious prosecution stemming from York's arrest and prosecution for three criminal offenses of which he was acquitted.  York seeks review of the legal issue of whether the trial court erred in its jury instructions for malicious prosecution.  York presents two questions for our review, namely, whether the trial court erred when it instructed the jury that York was required to prove that the Officers engaged in willful misconduct to prove his malicious prosecution claim, and whether the trial court erred when it instructed the jury that York's malicious

prosecution claim would fail if the Officers had probable cause to arrest him for one of the three crimes charged. After review of both issues, we affirm.

The trial court summarized the background of this case as follows. York brought a civil suit against the Officers alleging false arrest and malicious prosecution stemming from his arrest on June 12, 2018, and subsequent prosecution for unlawful possession of a firearm in violation of the Pennsylvania Uniform Firearms Act of 1995 (UFA),[1] unlawful possession of drug paraphernalia,[2] and violation of a Protection from Abuse (PFA) order.[3] Original Record (O.R.) at 991-1019,[4] Trial Court Opinion, 8/9/22, at 1. Regarding his criminal charges, on June 28, 2019, York was acquitted by a jury of the UFA charge, and the remaining charges were *nolle prossed*. Trial Court Opinion at 1. For his civil case, trial by jury commenced on March 28, 2022,[5] a verdict for the Officers on the malicious prosecution claim was entered on March 29, 2022, and the trial court entered a non-suit on the false arrest claim. *Id.* York filed a timely motion for a new trial and post-trial relief, which the trial court denied, after which York timely appealed. *Id.*

The trial court summarized the testimony of Officer Kanan, Officer Jackson, Detective Matthew Farley (Detective Farley), York, and Carla Stribbling, York's fiancée. Officer Kanan testified that he and Officer Jackson responded to a

---

[1] Section 6105 of the Crimes Code, 18 Pa. C.S. §6105.

[2] Section 13 of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §780-113.

[3] Section 6114 of the Protection From Abuse Act, 23 Pa. C.S. §6114.

[4] Because the Original Record was filed electronically and was not paginated, the page numbers referenced reflect electronic pagination.

[5] The trial court mistakenly stated that the civil trial began on March 29, 2022.

2

call for "a person screaming at 5643 Kingsessing Avenue" in Philadelphia. Trial Court Opinion at 2. Upon arrival, the Officers entered through the front door, which was open, and heard a female screaming on the second floor. When they went upstairs, they heard and saw York arguing with Ramika Williams, the mother of York's two children. Ms. Williams' brother, Bilal Williams, was also upstairs, but he left when the Officers arrived, indicating "[n]ow you're here, it's between them two, I'm out, I'm leaving, no reason for me here." *Id.* Officer Kanan testified that Mr. Williams had nothing to do with the argument between York and Ms. Williams, so there was no reason to stop him from leaving. *Id.*

Officer Kanan further testified that Ms. Williams told the Officers that the male (York) had a gun inside of the safe that was on top of the bed, and that York had a key to the safe on the key chain on his belt.[6] Trial Court Opinion at 2. Officer Kanan testified that York had his hand on the safe, and York told the Officers that the key to the safe was the second key on his key ring. *Id.* at 3. Ms. Williams also told the Officers that she had a PFA against York, and that he was violating the PFA. *Id.* Officer Kanan testified that, at that point, the Officers placed York in handcuffs, escorted him outside the house, and placed him in the police car for safety reasons, but he was not under arrest at that point. *Id.* The Officers opened the safe and discovered the gun, drug paraphernalia, and $18,409.00 in cash. *Id.* at 2. The Officers verified that York was subject to an active PFA, which prohibited him from being in Ms. Williams' home and from possessing a firearm.[7] Once they confirmed the valid PFA, the Officers placed York under arrest for the firearm and PFA

---

[6] The safe is described as a small, portable safe, similar to a suitcase. *See* Supplemental Reproduced Record (S.R.R.) at 130b.

[7] The terms of the PFA prohibit York from contacting Ms. Williams, even if she consents to his contact, and prohibit him from possessing firearms. S.R.R. at 101b-11b.

3

violations. *Id.* at 3. Officer Kanan also testified that York provided his Pennsylvania driver's license with the 5643 Kingsessing Avenue address. *Id.* at 2.

Officer Jackson testified that he prepared an incident report, which was a brief summary of the events, and gave a more detailed statement to Detective Farley. In addition to confirming the specifics to which Officer Kanan had already testified, Officer Jackson testified that he believed that Ms. Williams was afraid of York, because she stated she was afraid that he would kill her, and that, if asked to testify in court, she would lie and say she never called the police. Trial Court Opinion at 3. Officer Jackson also testified that York denied the gun was his, and that "he was holding it for a friend." *Id.* at 4.

Detective Farley testified that he reviewed the paperwork prepared by the Officers, took statements from the Officers, and prepared the investigation report for referral to the District Attorney's Office. Trial Court Opinion at 4. Detective Farley reviewed the property receipts for the gun, drug paraphernalia, and cash taken from the safe, which were described as belonging to York. *Id.* He verified the PFA between York and Ms. Williams and verified York's address on Kingsessing Avenue through the Bureau of Motor Vehicles. *Id.* at 5. Detective Farley also explained that arresting officers, like the Officers here, "do not determine whether criminal charges are brought against a suspect; that is the responsibility of the assigned detective based upon the information provided by the arresting officers, and then by the District Attorney's Office." *Id.*

York testified that he did not reside on Kingsessing Avenue in 2018, but had moved to Blackwood, New Jersey (NJ), where he was living with his fiancée, Ms. Stribbling. Trial Court Opinion at 5. York provided a New Jersey state identification card (not a driver's license) with a New Jersey address that he got in

4

March or April 2018. *Id.* York first denied, then admitted, he was aware of the PFA that prevented him from going to Ms. Williams' house. *Id.* York testified that on the date of the incident, Ms. Williams called him and told him their daughter was sick, so he went to their house on Kingsessing Avenue. *Id.* He testified that when he arrived, the door was open, he went inside, found that his daughter was sleeping, and that nothing was actually wrong. *Id.* York believed Ms. Williams used this story as a ruse to get him to her house to talk about getting back together, and that started the argument between the two of them. *Id.* at 6. York testified that Mr. Williams panicked and rushed out of the room when the police arrived, and that he and Ms. Williams continued to argue in front of the Officers. *Id.* York admitted that the Officers told him he was not under arrest when they initially handcuffed and removed him from the home, but he also testified he thought that he was under arrest. *Id.* York testified that he did not hear Ms. Williams tell the Officers he had a gun in the safe, and that it was not until later that he found out there was a gun, drug paraphernalia, and cash in the safe. *Id.* York denied he owned the contents of the safe, denied he told the police he lived on Kingsessing Avenue, and denied telling the police he was holding the gun for a friend. *Id.*

York then testified about the conversation he had with his lawyer after he was acquitted, regarding the return of the cash from the safe. Although York continued to deny he owned the cash before his arrest, he was informed by his attorney that he was entitled to have the cash returned to him after being acquitted, and that his attorney filed a motion for return of property on his behalf. Trial Court Opinion at 7-11. York testified that "[b]ecause I was--the whole criminal trial was about everything that was in the safe. And they said everything in the safe was mine when I told them that it wasn't. So they basically forced the ownership on me." *Id.*

5

at 11. *See* S.R.R. at 123b-28b. The trial court entered an order memorializing the agreement between York (also known as Dontae Harris) and the District Attorney's Office to return $15,000 to York, with the remaining $3,409 to be forfeited to the District Attorney's Office. *Id.* at 129b. York testified that even though he knew it did not belong to him, he did not try to return the money, and did not regret taking it. Trial Court Opinion at 7-10. York was incarcerated for over a year awaiting trial, and he testified that he developed diabetes while incarcerated due to stress, and he now panics when he sees police.[8] *Id.* at 11.

Finally, Ms. Stribbling testified, in relevant part, that York lived with her and her children in Blackwood, NJ since 2018. Trial Court Opinion at 11. She confirmed that York told her he was going to Ms. Williams' house in Philadelphia on June 18, 2018, to see about his children and that he was arrested. *Id.* She testified that she saw the Officers joking around and laughing with each other outside the courtroom of York's trial. *Id.* She testified that she observed changes in York's behavior since his incarceration, including difficulty sleeping, the onset of diabetes, and panicking around police. *Id.*

The trial court then discussed York's claims that the jury instructions on malicious prosecution were erroneous.[9] The trial court reviewed the standard of review for jury instructions and the doctrine of harmless error. Trial Court Opinion at 12-13. The trial court then addressed York's first claim, that the trial court

---

[8] York also testified that he had been arrested approximately 20 times and incarcerated over 10 times. Trial Court Opinion at 11 n.7.

[9] Before the trial court, York raised an additional error regarding the trial court's denial of his motion in limine to preclude discussion of the PFA, but York forfeits that issue in his appeal to this Court. *See* Appellant's Brief at 3. Therefore, we will not discuss that issue further. In addition, York did not seek review of the trial court's dismissal by non-suit of his false arrest claim. Therefore, we will not discuss that issue further.

"erroneously instructed the jury that in addition to proving malicious prosecution, [York] was also required to separately prove that the [O]fficers engaged in willful misconduct to find the [O]fficers liable." *Id.* at 13. The trial court provided the following jury instructions on this issue:

> You heard mention of the Tort Claims Act. So in the Pennsylvania [P]olitical [S]ubdivision Tort Claims Act[10] is a piece of legislation, and that governs when a municipality or its employees can be held liable for damages for injury to a person or property. The Tort Claims Act grants a general blanket of immunity to municipalities and their employees with certain exceptions.
>
> The Tort Claims Act provides that an employee of a municipality, such as a police officer, may be personally liable for tortious conduct, but only in limited circumstances. An employee may be held liable only where his conduct constituted a crime, actual fraud, actual malice or willful misconduct.
>
> Let me define for you what willful misconduct means. Willful misconduct entails actual prior knowledge of the plaintiff's [York's] peril and must be carried out with the intention of achieving exactly that wrongful purpose. In the context of claims of false arrest and malicious prosecution, willful misconduct only exists if the [O]fficers deliberately arrested or prosecuted [York] knowing that they lacked probable cause to do so. In other words [York] must show not only that the [O]fficers intended to commit the acts that they are accused of carrying out, but also that the [O]fficer[s] understood that the actions that they intended to take were unlawful and then chose to take those actions anyway. Gross negligence or recklessness is not sufficient to prove willful misconduct.

---

[10] Part of the Judicial Code is commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 43 Pa. C.S. §§8541-8564.

7

*Id.* at 13-14. *See also* S.R.R. at 94b-95b.

The trial court reviewed York's argument that "willful misconduct" is synonymous with "intentional tort," citing *King v. Breach*, 540 A.2d 976 (Pa. Cmwlth. 1988). York argued if that was the case, then the trial court's instruction that a separate finding of willful misconduct was necessary was legal error, placed an additional burden on York, and unfairly "stacked the deck" against him. Trial Court Opinion at 14. The Officers responded that under the Tort Claims Act, the Officers were immune from liability unless York proved they engaged in willful misconduct, such that a separate instruction on willful misconduct was necessary. *Id.* The Officers further responded that any error on this issue would be harmless because the jury never reached the question of willful misconduct. Because the jury found the Officers not liable for the tort of malicious prosecution, it never reached, and did not need to reach, the question of willful misconduct. *Id.* at 14-15.

The trial court agreed with the Officers that the willful misconduct argument was moot, concluding that the jury never reached it because it "did not find [York] was the subject of malicious prosecution by either of the [Officers]." Trial Court Opinion at 15. The trial court further concluded that even if the jury had reached that question, the jury instruction was appropriate under the Tort Claims Act and *Renk v. City of Pittsburgh*, 641 A.2d 289, 292 (Pa. 1994). *Id.* The trial court reviewed the applicable sections of the Tort Claims Act, especially Sections 8545 and 8548(a) of the Tort Claims Act, 42 Pa. C.S. §§8545 and 8548(a), that remove both immunity and indemnity when an officer is judicially determined to have committed willful misconduct. *Id.* at 15-16. The trial court then reviewed *King*, 540 A.2d 976, which equated willful misconduct with intentional tort, determined that our Supreme Court's decision in *Renk*, 641 A.2d at 293, disapproved of that

8

language, and directed that *King* has no precedential value in police misconduct cases. Trial Court Opinion at 16-17. The trial court then concluded that the reasoning in *Renk* applied here, stating as follows.

> It is conceivable that a jury could find a police officer liable for malicious prosecution under circumstances which demonstrate that the officer did not deliberately institute proceedings against the plaintiff *knowing* that he lacked probable cause to do so. Thus, the finding of willful misconduct is necessary to determine whether immunity applies.

*Id.* at 18 (emphasis in original). The trial court further reasoned that the plain language of Section 8550 of the Tort Claims Act, 42 Pa. C.S. §8550, entitled "Willful Misconduct," applies to official liability (immunity) generally as well as to indemnity, "both of which are lost if it is judicially determined that the employee's act constituted willful misconduct." *Id.* Therefore, the trial court rejected York's argument that a separate finding of willful misconduct was not required and concluded that the jury instruction was properly given. *Id.*

The trial court then determined that if the willful misconduct jury instruction was given in error, any error was harmless because the jury never reached the question. Trial Court Opinion at 18. The trial court reviewed the verdict slip, which clearly listed four separate questions. *Id. See also* S.R.R. at 1b-2b. The jury answered "no" as to both of the Officers in question number one, indicating that York did not prove by a preponderance of the evidence that either Officer maliciously prosecuted him. Trial Court Opinion at 18, S.R.R. at 1b. With a "no" answer for both of the Officers in question one, the verdict sheet directed the jury to "return to the courtroom without the need of answering the remaining questions, including question number [three] pertaining to willful misconduct." Trial Court Opinion at 19, S.R.R. at 1b. The trial court reasoned that because the jury did not

9

reach the willful misconduct question, York was unable to show that he was prejudiced by that jury instruction, making any allegations of error harmless, relying on *Boyle v. Independent Lift Truck, Inc.*, 6 A.3d 492, 496 (Pa. 2010). Trial Court Opinion at 19.

The trial court then turned to York's second claim, that the jury instruction pertaining to probable cause for malicious prosecution was erroneous because it

> instructed the jury that if [it] found that the [Officers] had probable cause to initiate a prosecution for *any one* of the three crimes for which he was charged (i.e. violation of the [PFA] order, unlawful possession of a firearm, or possession of drug paraphernalia) then that was sufficient to find in favor of the [O]fficers on the malicious prosecution claim.

Trial Court Opinion at 19 (emphasis in original). The trial court provided the following jury instruction on this issue.

> For malicious prosecution, the question for you to decide is whether [] the [Officers], possessed probable cause to initiate the prosecution against [York] at the time that the prosecution was initiated. The prosecution was initiated against [York] when he was formally charged with a crime by the [D]istrict [A]ttorney's office. In this case, he was charged with a crime on June 13, 2018—he was charged with three crimes rather—which was the day after he was arrested. For malicious prosecution, you must determine if there was probable cause to prosecute [York] for a crime at that time. To succeed in a claim for malicious prosecution, [York] must show that the [Officers] did not have probable cause, as I said, to initiate prosecution for any crime. If you find that the [Officers] had probable cause to initiate prosecution for any one of the three crimes for which he was charged, then you must find in favor of the [Officers] on the malicious prosecution claim. So, [] York was arrested and prosecuted for unlawful possession of a firearm, possession of drug paraphernalia, and

10

contempt for a violation of a [PFA]. I'm going to instruct you on the elements of these offenses, and the circumstances where probable cause would exist for each offense.

*Id.* at 19-20. *See also* S.R.R. at 93b-94b. The trial court rejected as "plainly incorrect" York's argument that the only crime for which the jury could have found probable cause existed was violation of the PFA. *Id.* at 19. The trial court concluded that there was ample evidence for the jury to conclude that probable cause existed to arrest and prosecute York on all three charges, further noting that the denial to suppress the evidence at York's criminal trial constituted a judicial determination that probable cause existed. *Id.* at 20.

The trial court then addressed York's argument that probable cause to prosecute him for a minor crime, the PFA violation, did not constitute probable cause to prosecute him for unrelated, more serious offenses, the UFA and drug charges, relying on *Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007). Trial Court Opinion at 21. The Officers responded that *Johnson* only applies to a narrow set of circumstances, not present here. The Officers further responded that York should be judicially estopped from disavowing ownership of the money in the safe, when he admitted he was the owner on his verified motion for return of property. The Officers argue that York's admission to owning the cash in the safe established probable cause to believe he owned the safe and its other contents, the gun and drug paraphernalia, thereby establishing probable cause to prosecute him. *Id.*

The trial court established, and the parties agreed, that there is no Pennsylvania law on the probable cause issue, likely due to the fact that these claims are generally brought in federal court. Trial Court Opinion at 21. The trial court acknowledged that although the decisions of the federal district courts and courts of appeal are not binding on Pennsylvania courts, we often look to these opinions for

11

guidance when facing the same issues. *Id.* The trial court then reviewed the prevailing law on this issue in *Wright v. City of Philadelphia*, 409 F.3d 595, 604 (3d Cir. 2005), that holds "the existence of probable cause as to one charge bars a plaintiff's malicious prosecution claim entirely." Trial Court Opinion at 21-22. The trial court also noted several cases that followed *Wright*, including *Kossler v. Crisanti*, 564 F.3d 181, 194 n.8 (3d Cir. 2009) (en banc), that stated, to the extent *Johnson* and *Wright* are in conflict, "'if one of those two cases must control for purposes of analyzing the probable cause element, it would be *Wright*, not *Johnson*, that controls.'" Trial Court Opinion at 22, n.11.

The trial court concluded that York's reliance on *Johnson* was misplaced when *Johnson* involved a distinguishable set of circumstances where charges were tacked on after the plaintiff's arrest, and where the defendant officer inserted himself into the post-arrest process by lodging additional charges against a suspect with whom he had a confrontation at the police station. Trial Court Opinion at 22. The trial court concluded that the circumstances in *Johnson* "differ significantly" from York's circumstances, where York "was charged with three crimes at the time of arrest and was prosecuted for the same three crimes," and that the three charges "were 'intertwined' as contemplated in [*Wright*]." *Id.* at 23. The trial court then concluded that the rule articulated in *Wright* applied here, namely, "that probable cause as to one crime, was sufficient to defeat the claim for malicious prosecution. Here, the jury was free to determine whether probable cause existed for any one of the crimes charged against [] York, thus, the jury instruction was correct and a new trial is not warranted." *Id.* York then appealed to this Court. He seeks a new trial based on the trial court's errors of law in the jury instructions regarding malicious prosecution.

12

Review of the relevant legal framework will assist our analysis. Our Court's review of jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case. *Stewart v. Motts*, 654 A.2d 535, 540 (Pa. 1995). The Supreme Court has further provided:

> Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. *Glider v. Com*[*monweath*] *Dep*[*artment*] *of H*[*ighways*], [255 A.2d 542, 547 (Pa. 1969)]. A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." *Voitasefski v. Pittsburgh* [*Railways*] *Co.*, [69 A.2d 370, 373 (Pa. 1949)]; [a] reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. *Sweeny v. Bonafiglia*, [169 A.2d 292, 293 (Pa. 1961)]; *Giorgianni v. DiSanzo*, [140 A.2d 802, 805 (Pa. 1958)]. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety. *McCay v. Philadelphia Electric Company*, [291 A.2d 759, 763 (Pa. 1972)].

*Stewart*, 654 A.2d at 540.

In addition:

> The proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

*James v. Albert Einstein Medical Center*, 170 A.3d 1156, 1164 (Pa. Super. 2017) (quoting *Krepps v. Snyder*, 112 A.3d 1246, 1256 (Pa. Super. 2015) (citations and internal punctuation omitted)).[11]

The elements of malicious prosecution are: (1) the institution of proceedings against the plaintiff without probable cause and with malice and (2) the proceedings were terminated in favor of the plaintiff. *Alleyne v. Pirrone*, 180 A.3d 524, 528 n.3 (Pa. Cmwlth. 2018)(citing *Turano v. Hunt*, 631 A.2d 822, 825 (Pa. Cmwlth. 1993)).

> "Probable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged." *La Frankie v. Miklich*, [618 A.2d 1145, 1148 (Pa. Cmwlth. 1992)]. Notably a successful case for malicious prosecution is both rare and arduous. "Malicious prosecution is an action which runs counter to obvious policies of law in favor of encouraging proceedings against those who are apparently guilty … It never has been regarded with any favor by the courts, and it is hedged with restrictions which make it very difficult to maintain." *Corrigan v. Cent*[*ral*] *Tax Bureau of* [*Pennsylvania*]*, Inc.*, 828 A.2d 502, 506 (Pa. Cmwlth. [2003]) (internal quotations omitted) …. "If this were not so, it would deter men from approaching the courts of justice for relief." *Id.*

*Alleyne*, 180 A.3d at 540.

Further, the determination of whether the Officers could be found liable for damages for the intentional tort of malicious prosecution depends on whether their actions constituted willful misconduct under the Tort Claims Act. Section 8541

---

[11] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

of the Tort Claims Act states that, except as otherwise provided, no local agency shall be liable for damages to person or property for actions of an employee. 42 Pa. C.S. §8541. Section 8542(b) of the Tort Claims Act provides for nine exceptions to this immunity, none of which include an exception for intentional torts. 42 Pa. C.S. §8542(b). Section 8545 of the Tort Claims Act establishes official liability generally, stating that an employee of a local agency is liable for civil damages only to the same extent as his or her employer for acts within his or her official duties, subject to certain limitations. 42 Pa. C.S. §8545. Section 8547 of the Tort Claims Act requires the local agency to provide legal assistance to its employees for the defense of such claims. 42 Pa. C.S. §8547. Section 8548 of the Tort Claims Act requires the local agency to indemnify its employees against payment of any judgment on the suit. Lastly, Section 8550 of the Tort Claims Act, entitled "Willful Misconduct," states:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a *crime, actual fraud, actual malice or willful misconduct*, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to the defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

43 Pa. C.S. §8550 (emphasis added).

As to the first issue, York reiterates the arguments he made before the trial court, arguing that a separate willful misconduct jury instruction was erroneous, and unfairly stacked the deck against York. York not only objects to the jury instruction on malicious prosecution and willful misconduct set forth above, but also

15

to the following instructions that preceded those set forth above. A few paragraphs earlier, the trial court instructed that

> [i]n this case, [York] has the burden of proving the following things: Number one, that the [Officers'] conduct constituted malicious prosecution. Number two, the [Officers'] conduct constituted willful misconduct. Number three, the [Officers'] conduct was a factual cause in bringing about the harm to [York]. [York] also has the burden of proving the extent of damages caused by the [Officers'] malicious prosecution if you find so.

S.R.R. at 93b; Appellant's Brief at 13.

York argues that these two parts of the trial court's instructions unfairly increase York's burden of proof. York further argues that the trial court erred when it applied Section 8550 of the Tort Claims Act to both immunity from liability and to indemnity, when *Renk*, 641 A.2d 289, addressed only indemnity. York further cites to our Court's decision in *Cruz v. Police Officers MaDonna, Peachey, and McCue* (Pa. Cmwlth., No. 1748 C.D. 2015, filed January 27, 2017), attached to his brief, arguing that the Court has applied willful misconduct in Section 8550 of the Tort Claims Act to the question of indemnity, but not to liability.[12] The Officers' response on this issue repeats their arguments to the trial court, and emphasizes that the plain language of Section 8550 and the willful misconduct provision applies to both liability in Section 8545 and indemnity in Section 8548. The Officers further respond that York misstates the Tort Claims Act analysis, and that neither *Renk* nor *Cruz* support his argument.

In *Renk*, our Supreme Court considered the case of a City of Pittsburgh police officer who was found liable for the torts of assault, battery, and false

---

[12] *See* Pa.R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

16

imprisonment for injuries to an individual during an arrest, and who had a judgment of $7,648.08 entered against him. *Renk*, 641 A.2d at 291. The police officer sought indemnification from the City of Pittsburgh for the amount of the judgment, and the Supreme Court considered whether "a determination of liability for tortious conduct is the equivalent of a judicial determination of willful misconduct sufficient to preclude indemnification for the payment of a judgment entered in the action." *Id.* at 292. The Supreme Court analyzed the Tort Claims Act and the Commonwealth Court's decision in *King*, 540 A.2d at 981, especially the statement that "willful misconduct is synonymous with intentional tort." The Supreme Court concluded that the quoted statement from *King* did not apply to police misconduct cases, stating, "[t]his equation has no validity in the context of a lawsuit based on police conduct, however. The *King* decision, which did not involve police conduct, is of no precedential value." *Renk*, 540 A.2d at 293.

The Supreme Court held that

> [i]t is conceivable that a jury could find a police officer liable for those torts [assault and battery, and false imprisonment] under circumstances which demonstrate that the officer did not intentionally use unnecessary and excessive force, or did not deliberately arrest a person knowing that he lacked probable cause to do so.

*Renk*, 641 A.2d at 293-94. The Supreme Court reversed the Commonwealth Court, and held that the jury verdict alone was insufficient to establish the officer's willful misconduct, the City of Pittsburgh failed to establish the officer's acts were willful misconduct, and the City of Pittsburgh would be required to indemnify the officer for the amount of the judgment. *Id.* at 294.

In *Cruz*, our Court considered the case of a City of Philadelphia police officer who was found liable for the intentional torts of assault, battery, and false

17

imprisonment for injuries to an individual during an arrest, and who had a judgment of $33,700 entered against him. *Cruz*, slip op. at 1. After the verdict was returned, the trial court then charged the jury with determining whether the officer had committed willful misconduct in bringing about the harm to the arrestee, and the jury found that the officer did not. *Id.*, slip op. at 2. The officer sought and was denied post-trial relief, after which he appealed, arguing that, as a matter of law, he could not be liable for the intentional torts alleged when the jury found that he did not commit willful misconduct. *Id.* The Court reviewed the Tort Claims Act and *Renk*, and determined that

> [b]ased upon our review of the record in its entirety, we conclude that the jury determined that while [the officer] intentionally struck and detained Cruz [the arrestee], he subjectively felt that he could do so under these circumstances. The jury, as trier of fact, was free to draw the conclusion that [the officer's] actions, regardless of his subjective belief, were not justifiable in the instant matter. One can have an honest belief that his actions are justified. It is, however, within the jury's province to find that such actions were not justified, despite the actor's belief to the contrary. In such situations, under *Renk*, the trier of fact can find the officer not immune, but nevertheless not so unjustified in his subjective belief as to lose his right to indemnification.

*Cruz*, slip op. at 7.

As to the second issue here, whether the trial court erred in its jury instructions on probable cause and malicious prosecution, we agree with the trial court and the parties that we must be guided by the decisions of the federal district courts and appeals courts when there is no Pennsylvania law on this point. On this issue, York again argues that we should be guided by *Johnson* and not *Wright*, and

18

the Officers respond that the general rule in *Wright* should apply when *Johnson* was decided on specific facts not present here.

In *Wright*, 409 F.3d at 596, the Third Circuit Court of Appeals considered an arrestee who was charged with burglary, theft, criminal mischief, and criminal trespass, whose charges were eventually dismissed, and who then brought a civil rights action for false arrest and malicious prosecution against the arresting officers. The Court analyzed whether the officers had probable cause to arrest the individual for criminal trespass, and concluded that they did, based on the information available at the time of her arrest. *Id.* at 603. The Court held that "[e]ven though our discussion of probable cause was limited to the criminal trespass claim, it disposes of her malicious prosecution claims with respect to all of the charges brought against her, including the burglary." *Id.* at 604.

In *Johnson*, 477 F.3d at 76, the Third Circuit Court of Appeals considered a parolee who was arrested on various charges stemming from an altercation between the parolee and his parole agent in the parole office, whose charges were eventually dismissed, and who then brought a civil rights action for false arrest and malicious prosecution. On the issue of probable cause and malicious prosecution, the Court acknowledged that the holding in *Wright* remained good law, but it was troubled by a broad application of *Wright* to situations where officers would be insulated from liability in all cases where they had probable cause for an arrest on only one charge. *Id.* at 83. The Court was concerned that officers could tack on more serious, unfounded charges which lacked probable cause, because there was probable cause to arrest on one charge. *Id.* at 84. The Court stated

> [t]his result seems unprincipled to us as there is a
> distinction on the one hand between a simultaneous arrest
> on multiple charges where, in a sense the significance of

the charges for which there was not probable cause for arrest is limited as the plaintiff in the ensuing civil action could have been lawfully arrested and thus seized on at least one charge and, on the other hand, prosecution for multiple charges where the additional charges for which probable cause is absent almost surely will place an additional burden on the defendant.

*Id.*

The Court found specific facts that distinguished it from *Wright*, namely, that the parole agent continued to be involved in the matter after the parolee's arrest, the parole agent advised the local police that parolee had threatened him, and he wanted the parolee to be prosecuted, was agitated over their confrontation in the waiting room and was alleged to have misrepresented the events that took place in the waiting room. *Johnson*, 477 F.3d at 84. The Court further observed that unlike in *Wright*, where the "circumstances leading to the arrest and prosecution were totally intertwined," the parole agent's actions in *Johnson* were "bifurcated in the sense that the agents first arrested [the parolee] and then, after the arrest, [the parole agent] took steps by supplying information to the [the local police] that led to [the parolee's] prosecution." *Id.* at 82 n.9. The Court then concluded

> [t]herefore, unlike the conduct of the defendants in *Wright*, [the parole agent's] involvement in both the arrest and the initiation of criminal proceedings against [the parolee] was more extensive, and lasted beyond the issuing of an affidavit of probable cause for his arrest and the arrest itself. In the circumstances, for both the legal and factual reasons we have set forth, we will not apply *Wright* to this case and thereby insulate [the parole agent] from liability for the alleged fraudulent fabrication of baseless charges against [the parolee].

*Id.* at 84.

As the trial court noted, the Courts in the Third Circuit have generally looked to *Wright* when analyzing the probable cause element of a malicious

20

prosecution claim. *See e.g., McIntosh v. Crist*, No. 13-103, 2015 WL 418982, at *6 (W.D. Pa. Feb. 2, 2015); *Kinsler v City of Philadelphia*, No. 13-6412, 2015 WL 3970899, at *6 (E.D. Pa. June 29, 2015) (collecting cases); *Laphan v. Haines*, No. 14-4063, 2016 WL 627246, at *5 n.10 (E.D. Pa. Feb. 16, 2016); *Blair v. City of Pittsburgh*, 711 Fed.App'x 98 (3d Cir. 2017). Further, the en banc Third Circuit has stated, to the extent that *Johnson* and *Wright* are in conflict, "if one of those two cases must control for purposes of analyzing the probable cause element, it would be *Wright*, not *Johnson* that controls." *Kossler*, 564 F.3d at 194 n.8.

As to the first issue, we must reject York's argument that the separate jury instructions on tort liability and willful misconduct were in error, when the plain language of the Tort Claims Act, *Renk*, and *Cruz* do not support his contentions. Section 8550 of the Tort Claims Act provides that when a judicial determination of willful misconduct is made, the official liability provisions in Section 8545 and the indemnity provisions in Section 8548 "shall not apply." Thus, if willful misconduct is judicially determined, the officer shall not be able to claim official immunity in Section 8545 or indemnity from his public employer in Section 8548(a).

The Supreme Court's holding in *Renk* explains why the question of tort liability and willful misconduct must be posed and answered separately, when the Court articulated a scenario in which an officer could be found liable for an intentional tort, but still retain his right to official immunity or indemnification if the trier of fact found him not to have committed willful misconduct. *Renk*, 641 A.2d at 293-94. A similar situation occurred in *Cruz*, and our Court affirmed the verdict below that found the officer liable for an intentional tort, but still entitled to indemnification after a finding of no willful misconduct. *Cruz*, slip op. at 7. Although those cases addressed the interplay between an intentional tort and willful

21

misconduct in the context of indemnity, they do not serve to limit the analysis to indemnity only, when the plain language of Section 8550 applies to both immunity and indemnity.

York's appeal does not call into question the indemnity issue, because here, unlike in *Renk* or *Cruz*, the Officers were found not liable for the tort of malicious prosecution, no judgment was entered against them, and they had no need to seek indemnification from the City of Philadelphia. York's argument on this issue is misplaced, because he attempts to draw a distinction between immunity and indemnity for willful misconduct purposes, when the Tort Claims Act does not support this distinction.

Upon review of the jury instructions on malicious prosecution and willful misconduct, as a whole, we discern no error of law by the trial court. We may not, as York suggests, take "certain portions or isolated excerpts out of context," but must "look to the charge in its entirety." *James*, 170 A.3d at 1164. As such, we find no error in these jury instructions when they "clearly and accurately explain[] the relevant law." *Id.*

We further agree with the trial court that if we discerned any error in the willful misconduct instructions, and we did not, any such error was harmless, because the jury never reached the question. The record, including the verdict slip, is clear that the jury first decided that York failed to prove the Officers maliciously prosecuted him, did not deliberate further, and did not reach the willful misconduct question or any of the other questions. *See* S.R.R. at 1b-2b. "[O]ur Commonwealth's long-standing caselaw holds that allegations of error are harmless where the jury is not required to deliberate over the issue out of which the alleged error arises in order to reach its verdict." *Boyle*, 6 A.3d at 496.

22

As to the second issue, we are not persuaded that the facts of York's arrest or prosecution are aligned with those in *Johnson*, or that the trial court erred in its jury instructions on malicious prosecution and probable cause. York failed to present facts that would distinguish it from the prevailing standard in *Wright*. Unlike the conduct of the parole agent in *Johnson*, the three charges against York stemmed from a single incident, where he was arrested on one day and charged the next day with the same three crimes. In this case there were no allegations that the Officers fabricated information or involved themselves beyond York's arrest to influence the prosecution. The Officers and Detective Farley testified that it was the responsibility of the detective and the District Attorney to make the decision to initiate prosecution, not the Officers. The facts presented here demonstrate that York's arrest and prosecution were intertwined, and the Officers did not initiate prosecution against York, such that the trial court correctly applied the prevailing standard in *Wright*. Because we find no error in the jury instructions on probable cause, we need not address the Officers' argument that York should be estopped from challenging probable cause based on his acceptance of cash found in the safe.

Accordingly, we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherod York,                    :
                                :
                    Appellant   :
                                :
        v.                      : No. 626 C.D. 2022
                                :
Abdel Kanan and Walter Jackson  :


O R D E R


AND NOW, this 13th day of July, 2023, the order of the Court of Common Pleas of Philadelphia County dated May 6, 2022, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge