J-A17040-17

2017 PA Super 293

| | |
|---|---|
| FLORENCE JAMES, INDIVIDUALLY AND AS THE EXECUTRIX OF THE ESTATE OF LAFAYETTE JAMES (DECEASED),<br><br>        Appellant<br><br>        v.<br><br>ALBERT EINSTEIN MEDICAL CENTER, RONALD WALOFF, M.D., ARIA HEALTH, THE FRANKFORD HOSPITAL OF THE CITY OF PHILADELPHIA, A/K/A AND OR D/B/A FRANKFORD HOSPITAL - TORRESDALE CAMPUS, ARIA HEALTH SYSTEM, ARIA HEALTH PHYSICIANS SERVICES, GLENN MEREWITZ, M.D., JEFFREY GREENSPAN, D.O., OXFORD CIRCLE FAMILY MEDICINE, ADAM S. PASTERNACK, D.O., THEODORE BURDEN, M.D., M.B.A. AND BURDEN-NEWTON MEDICAL ASSOCIATES,<br><br>        Appellees | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 1723 EDA 2016 |

Appeal from the Judgment Entered May 13, 2016
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: 00276 June Term, 2012

BEFORE:  DUBOW, J., RANSOM, J., and PLATT, J.[*]

OPINION BY PLATT, J.:                    **FILED SEPTEMBER 12, 2017**

Appellant, Florence James, individually and as the executrix of the estate of her deceased brother, Lafayette James, appeals from the jury verdict of no negligence in this medical malpractice claim.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

We note at the outset that at seventy-eight pages, Appellant's brief is more than two and a half times the "safe harbor" maximum of thirty pages (2.6 times, to be precise). Counsel for Appellant certifies that the brief consists of 13,971 words, twenty-nine words less than the specified limit of 14,000 words prescribed in our rules of appellate procedure. (**See** Certification of Compliance with Word Count Limit, 3/24/17); **see also** Pa.R.A.P. 2135(a)(1).

However, on independent examination, we confirm a count of 18,519 words, making the brief about a third longer than the maximum permissible length, without permission. It appears that counsel, or his word processor, misstated the count by over 4500 words (4548, to be precise), failing to comply with the requirements of Pa.R.A.P. 2135.

We could issue a rule to show cause order, with the possible sanction of quashal unless counsel provides an adequate explanation for the discrepancy. **See Commonwealth v. Spuck**, 86 A.3d 870, 877 (Pa. Super. 2014), *appeal denied*, 99 A.3d 77 (Pa. 2014).

However, we decline to do so for reasons of judicial economy. While the brief is excessively rambling and could have benefited from more careful editing, nothing in the available record suggests that reworking the existing materials would furnish any proper basis to disturb the jury's verdict. To allow (or require) another round of briefs would place an additional burden on the Appellees, and their counsel, and merely delay the inevitable.

Accordingly, to the extent possible, we will review Appellant's non-compliant brief on the merits, despite the obvious procedural defects.

This is a complicated and convoluted case, but the basic themes of the trial and the appeal may be simply stated. Appellant alleges that the defendants/Appellees, five physicians and the institutional medical providers for which they practiced, failed, for a period of over six years, from December of 2004 until March of 2011, to diagnose the cause of her brother's various recurring abdominal problems. In 2011, after a CT scan, liver biopsy, colonoscopy, and other tests, Lafayette was determined to have a neuroendocrine carcinoid tumor.[1] He died three years later, in February of 2014.[2]

---

[1] For background context, we take judicial notice that neuroendocrine tumors are a highly diverse group of tumors formed by neuroendocrine cells. Carcinoid tumors are by far the most common type of neuroendocrine tumor found in the gastrointestinal system. *See* the Memorial Sloan Kettering Cancer Center website, available at http://www.mskcc.org.

A carcinoid tumor is a specific type of neuroendocrine tumor. Carcinoid tumors most often develop in the GI (gastrointestinal) tract, in organs such as the stomach or intestines, or in the lungs. More than one carcinoid tumor can develop in the same organ.

Because carcinoid tumors develop from neuroendocrine cells, they can make high levels of neuropeptides and amines, which are hormone-like substances. However, these substances may not be released in large enough amounts to cause symptoms, or the substances may be defective and not cause symptoms. A carcinoid tumor can grow slowly for many years without causing symptoms. Although a carcinoid tumor is cancerous, it has been described as "cancer in slow motion." For additional information, *See*
*(Footnote Continued Next Page)*

At trial, Appellant argued, in effect, that defendants/Appellees failed to order the proper follow-up diagnostic tests, or to make appropriate referrals to specialists. As a result of this delay in diagnosis, Appellant maintains, decedent/Lafayette's tumor grew until it metastasized and became incurable.

Appellees defended on the ground that the physicians met the appropriate standard of care in all respects. They also contended that Lafayette was a noncompliant patient, who over the years failed to follow through on various referrals to specialists, failed to return for scheduled follow-up visits, and failed to present himself (in one instance, even failed to stay in the emergency room) for additional test procedures. The available record confirms that for the most part, decedent Lafayette only presented every year or two, when his abdominal symptoms were acute.[3]

Pertinent to issues raised on appeal, at trial, counsel for Appellant objected to the trial court's acceptance of Dr. Steven Peikin as an expert

*(Footnote Continued)* ───────────

http://www.cancer.net/cancer-type/carcinoid-tumor/introduction (sponsored by the American Society of Clinical Oncology).

[2] Lafayette brought suit before he died. After his death, his sister was substituted as plaintiff.

[3] Otherwise, he often would not follow up with his medical providers, or only consult with them on unrelated issues, such as to obtain a prescription for Viagra, without, however, reporting any ongoing symptoms related to his abdominal problems. (*See* Trial Court Opinion, 2/10/17, at 2-3).

defense witness on oncology.[4]  Appellant also tried to introduce evidence supporting a loss of consortium by testimony from the decedent's mother. Counsel also objected to certain jury instructions.  After a ten-day trial, the jury rendered a defense verdict, finding no negligence by any of the named defendants.

This timely appeal followed the denial by operation of law of Appellant's motion for a judgment notwithstanding the verdict (JNOV).[5]

Appellant raises six questions on appeal.

> (1) Whether the [t]rial [j]udge erred in qualifying Appellee Dr. Jeffrey Greenspan's gastrointestinal expert as an expert in oncology, thereby essentially denying in part Appellant's *Motion In Limine*, and allowing a gastroenterologist to offer causation and damages testimony outside the scope of his field of practice, thereby warranting JNOV in Appellant's favor, or, in the alternative, a new trial[?]

> (2) Whether the [t]rial [j]udge erred in sustaining Appellees' objection to the testimony of Appellant's Decedent's mother on the impact of the death of her son on her life, based on erroneous Appellees' argument at the time of her testimony that she was not a beneficiary to the action, whereas Decedent's mother clearly is in fact a recognized beneficiary under the Wrongful Death Act, thereby warranting JNOV in Appellant's favor, or, in the alternative, a new trial[?]

---

[4] Specifically, the court accepted Dr. Peikin as "an expert in the field of gastroenterology, carcinoid syndrome, and carcinoid cancers related to gastroenterology."  (N.T. Trial, 11/19/15 PM, at 31).

[5] Appellant filed a timely court-ordered statement of errors, on June 24, 2016.  The trial court filed an opinion on February 10, 2017.  *See* Pa.R.A.P. 1925.

(3) Whether the [t]rial [j]udge erred in its instruction to the jury on the definition of "injuries," when the jury inquired during deliberations as to the definition of injuries of the Appellant's Decedent allegedly caused by the negligence of the Appellees, for the [t]rial [j]udge's explanation of "injuries," was inconsistent with injuries as set forth in the Wrongful Death and Survival Acts, and the Suggested Standard Jury charges on injuries under the Wrongful Death and Survival Acts, thereby warranting JNOV in Appellant's favor, or, in the alternative, a new trial[?]

(4) Whether the [t]rial [j]udge erred by charging the jury a second time on the issue of physician negligence (which was Question Number 1 on the verdict sheet), where the nature of the jury's question during jury deliberation indicated that the jury had decided the issue of physician negligence adverse to the Appellees, and was focused on the impact of comparative negligence of the Appellant's Decedent (which was Question Number 3 on the verdict sheet) on the overall verdict, particularly where the jury requested clarification on Question Number 5 relating to appointment of percentage of liability on Appellees whose conduct were found to be a factual cause of injury to the Appellant's Decedent, thereby warranting JNOV in Appellant's favor, or, in the alternative, a new trial[?]

(5) Whether the [t]rial [j]udge erred by instructing the jury multiple times, at the insistence of Appellees' counsel, that Appellant's medical oncology expert Dr. Andrew Schneider was being presented as a witness on causation only, and not standard of care, where no such duplicative instructions were ever provided by the [t]rial [j]udge as to any other witness, thereby tainting the jury's prior instruction when the witness was qualified as an expert at the conclusion of *voir dire*, thereby warranting JNOV in Appellant's favor, or, in the alternative, a new trial[?]

(6) Whether, based on the overwhelming evidence presented at trial by the Appellant, through the testimony of the Appellee physicians and through expert witnesses, including Appellees' own expert witnesses, makes it not possible for two reasonable minds to disagree that the verdict should have been rendered in favor of the Appellant and against the Appellees[?]

(Appellant's Brief, at 6-7).

We observe that despite the narrative emphasis in Appellant's brief on foregone diagnostic opportunities, (*see id.* at 8-27), the principal focus of the appeal is on procedural claims of trial court error, chiefly involving the scope of admissible expert testimony, and various instructions the trial court gave the jury. We also observe that Appellant's issues tend to overlap somewhat, particularly as to jury instructions and the scope of certain expert testimony. Finally, in a protracted catchall argument, (the sixth claim), counsel for Appellant claims that she is entitled to JNOV (or a new trial).[6] (*See* Appellant's Brief, at 57-77). On independent review, we conclude that none of Appellant's issues merit relief.

Appellant's first issue challenges the trial court's acceptance of Dr. Steven Peikin, Dr. Greenspan's expert witness, as an expert in oncology.[7] (*See* Appellant's Brief, at 6). The thrust of Appellant's argument is that Dr. Peikin was improperly permitted to testify outside the scope of his primary specialty, gastroenterology. (*See id.* at 25, 28-30). We disagree.

> The decision of the trial judge to admit expert testimony may be reversed only where there has been an error of law or an abuse of the substantial discretion vested in the trial court. The Pennsylvania Supreme Court has repeatedly held that the

---

[6] However, all of Appellant's claims raise the issue of JNOV (or a new trial), directly or indirectly.

[7] Counsel for Appellant timely objected to the trial court's acceptance of Dr. Peikin as an expert on oncology. (*See* N.T. Trial, 11/19/15 PM, at 7, 31).

standard for evaluating the qualifications of an expert witness under Pennsylvania law is a liberal one:

> The test to be applied when qualifying an expert witness is whether the witness has **any** reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine.
>
> \* \* \*
>
> In the area of medicine, specialties sometimes overlap and a practitioner may be knowledgeable in more than one field. Different doctors will have different qualifications, some doctors being more qualified than others to testify about certain medical practices. It is, however, for the jury to determine the weight to be given to expert testimony, in light of the qualifications shown by the expert witness.

*B.K. ex rel. S.K. v. Chambersburg Hosp.*, 834 A.2d 1178, 1182 (Pa. Super. 2003), *appeal denied*, 847 A.2d 1276 (Pa. 2004) (citations and internal quotation marks omitted) (emphasis in original).

Here, it bears noting that Appellant's argument is not supported by controlling authority. Appellant cites *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436 (Pa. Super. 1987), *appeal denied*, 551 A.2d 215 (Pa. 1988). (*See* Appellant's Brief at 29). However, even *McDaniel* recognized that "[e]xperts in one area of medicine have been ruled qualified to address other areas of specialization where the specialties overlap in practice, or where the specialist has experience in another related medical field." *McDaniel*, *supra* at 442 (collecting cases).

The *McDaniel* Court explained:

- 8 -

The law regarding the qualification of witnesses as experts is well established. It is true that whether a witness has been properly qualified to give expert opinion testimony is vested in the discretion of the trial court. The Pennsylvania standard of qualification for an expert witness is a liberal one. If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his evidence is for the jury. Although the witness must demonstrate some special knowledge or skill, there is **no requirement that a witness acquire that knowledge as a result of formal schooling; expertise acquired by experience is expertise nonetheless.**

*Id.* at 440 (citations and internal quotation marks omitted; emphasis added).

Statutory law supports the same result. In pertinent part, the Medical Care Availability and Reduction of Error (MCARE) Act, 40 Pa. Stat. Ann. §§ 1303.101-1303.910, provides that:

**(e) Otherwise adequate training, experience and knowledge.**—A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of **active involvement in** or full-time teaching of medicine in **the applicable subspecialty or a related field of medicine** within the previous five-year time period.

40 Pa. Stat. Ann. § 1303.512 (emphases added).

In this case, counsel for Appellant obtained Dr. Peikin's concession that he is not board certified in oncology. (**See** Appellant's Brief, at 29). Nevertheless, there is no dispute that Dr. Peikin **is** board certified in internal medicine and gastroenterology. He was previously on the faculty of Jefferson Medical College for twelve years. He is the head of

Gastroenterology and Liver diseases at Cooper University Hospital, and is an adjunct professor at the University of Texas M.D. Anderson Cancer Center. Dr. Peikin testified that as a gastroenterologist, he diagnoses cancer. At Cooper, he is on the "tumor board," a multidisciplinary team which monitors cancer patients and decides on courses ("modalities") of treatment. Earlier in his medical career, after graduating from Jefferson Medical College, he completed a fellowship in gastroenterology at Harvard (where he was assigned to Massachusetts General Hospital). He also did a two year fellowship in **endocrine tumors** (the tumors at issue here) at the National Institutes of Health.

We note that the requirements for expert testimony on standard of care are even more stringent than the requirements for expert testimony on causation. Under either standard, however, we discern no error of law or abuse of discretion in the trial court's decision to accept Dr. Peikin as an expert in the field of carcinoid tumors. Appellant's first issue does not merit relief.

In her second issue, Appellant challenges the limitation of the testimony of Florence James, mother of the decedent (Mother), about her pain and suffering. (**See** Appellant's Brief, at 6). Appellant argues that Mother was improperly prohibited from testifying about the impact of the death of her son on her life. (**See id.** at 31-37). We disagree.

We observe that Mother was not a plaintiff in this lawsuit. Nevertheless, the trial court permitted Mother to testify about her pecuniary losses as a beneficiary under the wrongful death statute. However, the trial court sustained defendants' objections to questions about Mother's pain and suffering. After this ruling, Appellant's counsel declined to question Mother further.

Counsel for Appellant argues, correctly, that parents are included as potential beneficiaries under the Wrongful Death Statute. (**See** Appellant's Brief, at 35).

In pertinent part, the statute provides:

> **(b) Beneficiaries.**—Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children **or parents** of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.

42 Pa.C.S.A. § 8301(b) (emphasis added).

However, Mother would not be entitled to damages for the loss of consortium with regard to her son. It is well-settled that Pennsylvania does not recognize a right of filial consortium. **See Machado v. Kunkel**, 804 A.2d 1238, 1244 (Pa. Super. 2002), *appeal denied*, 819 A.2d 547 (Pa. 2003); *see also Jackson v. Tastykake Inc.*, 648 A.2d 1214, 1217 (Pa. Super. 1994) (collecting cases). The trial court properly sustained

objections to testimony about mother's pain and suffering, which raised the issue of mother's loss of consortium. Appellant's second claim does not merit relief.

Appellant's third, fourth, and fifth issues all challenge jury instructions of the trial court. (*See* Appellant's Brief, at 37-44, 45-52, 52-56). We address them together.

> Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. Error in a charge occurs when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Conversely, a jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations.

> The proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

> In other words, there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law.

*Krepps v. Snyder*, 112 A.3d 1246, 1256 (Pa. Super. 2015), *appeal denied*, 125 A.3d 778 (Pa. 2015) (citations and internal punctuation omitted).

Here, Appellant fails to demonstrate error in the various challenged jury instructions. Instead, her counsel purports to interpret, with no source cited, what the jury may have been thinking when it raised various questions, and what conclusions **it may have already reached**. (*See,*

- 12 -

*e.g.*, Appellant's Brief, at 41) ("A reasonable interpretation of the jury's question . . . is . . ."); (*id.* at 45) ("[T]he nature of the jury's question . . . indicated that the jury **had decided** the issue of physician negligence adverse to the Appellees . . . .") (emphasis added).

We decline Appellant's invitation to engage in speculation or conjecture about what the jury, collectively or individually, may have been thinking when it asked the trial court a clarification question, let alone, presume to direct the trial court, as counsel suggests, to engage in specific procedures based on any such speculation. (**See** Appellant's Brief, at 51) (arguing the trial court should not have re-read the burden of proof charge to the jury because the nature of the jury's question suggested the jury had already decided the issue of physician negligence adversely to the defendants). Appellant's self-serving speculations are unsupported, and unwarranted; in any event they fail to demonstrate actionable error or abuse of discretion by the trial court. Appellant's third and fourth claims do not merit relief.

On the fifth claim, Appellant challenges the trial court's cautionary instructions on the scope of testimony of plaintiff/Appellant's oncology expert, Dr. Andrew Schneider. Counsel for Appellant had agreed in advance to limit the scope of Dr. Schneider's testimony to causation, apparently in recognition of the fact that Dr. Schneider was not qualified to testify as an expert on standard of care. Nevertheless, counsel persisted in asking (and Dr. Schneider repeatedly volunteered testimony), whether the defendant

physicians rendered a timely diagnosis, an implicit standard of care question, not correlated to causality. On defense objection, the trial court responded by reminding the jury through cautionary instructions that Dr. Schneider's expert testimony was limited to causation, not standard of care.

On independent review, we conclude that the trial court's explanation for the repeated cautionary instructions, necessitated by the repeated failure of both Appellant's counsel and Dr. Schneider to abide by the agreed-on restrictions, was more than adequate to demonstrate that no error of law or abuse of discretion occurred. (*See* Trial Ct. Op., at 11). Appellant's fifth claim does not merit relief.

Finally, in her sixth claim, Appellant argues generally that the trial court improperly denied JNOV. (*See* Appellant's Brief, at 57-77). We disagree.

> Our standard of review of an order denying judgment n.o.v. is whether, reading the record in the light most favorable to the verdict winner and granting the benefit of every favorable inference, there is sufficient competent evidence to support the verdict. Any conflict in the evidence must be resolved in the verdict winners' favor. Judgment n.o.v. may be granted only in clear cases where the facts are such that no two reasonable minds could fail to agree that the verdict was improper.

***Tillery v. Children's Hosp. of Philadelphia***, 156 A.3d 1233, 1239–40 (Pa. Super. 2017) (citations omitted).

Appellant maintains that because of the "overwhelming amount of evidence" in support of her claims, no two reasonable minds could disagree that the jury rendered an incorrect verdict. (Appellant's Brief, at 58). It

bears noting that Appellant uses this unwarranted assumption as a springboard to reargue virtually the entire case. (*See id.* at 57-77).

Appellant's reargument misapprehends the purpose of appellate review. This is an error correcting Court. We do not sit to re-weigh the evidence and, if so inclined, overturn the jury's verdict. Instead, to prevail on appeal, it was Appellant's burden to prove an error of law, or that no two reasonable minds could disagree that the verdict was in error.

Under our standard of review, our role is to read the record in the light most favorable to the verdict winners and, granting the verdict winners the benefit of every favorable inference, to determine if there is sufficient competent evidence to support the verdict. *See Tillery*, *supra* at 1239–40. Mindful of that standard, we conclude that there is. For Appellant to prevail on a claim for JNOV it is not enough for Appellant's argument merely to recite a self-serving version of the facts and to frame the conclusion in the language of the standard. (*See* Appellant's Brief, at 77). Appellant's claim for JNOV would fail under our standard of review.

The death of Lafayette James is understandably an occasion of sadness for his survivors. But this family loss cannot and should not prevent us from deciding Appellant's claims according to well-settled precedent by long established legal procedures. Under our standard of review, Appellant has failed to prove any actionable error in the jury's verdict. Furthermore,

Appellant failed to prove any error or abuse of discretion in the trial court's rulings.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2017