J-A08030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MICHELLE ANGUS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW DILLON | : | No. 901 EDA 2024 |

Appeal from the Judgment Entered April 25, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  201201671

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JULY 29, 2025**

Michelle Angus appeals from the judgment entered in favor of Andrew Dillon and against Angus following a jury trial in this negligence case. Angus challenges evidentiary rulings and a jury instruction. We affirm.

Following a car accident, Angus sued Dillon for negligence. Angus moved *in limine* to preclude evidence of two prior work injuries, one from 2016 and one from 2018. Among other things, she argued that her "only claimed injury from this accident is a lower back injury." Memo. of Law in Support of Plaintiff's Motion *in Limine* to Preclude Evidence, filed Dec. 29, 2023, at 3 (unpaginated). The trial court denied the motion. It ruled that evidence related to the prior injuries "bore on whether Dillon's negligence in 2020 injured Angus's back and aggravated her pre-existing injuries." Trial Court Opinion, filed July 29, 2024, at 2.

In addition, the parties requested a pretrial ruling on the cross-examination of one of Angus's medical experts, Dr. Clifton D. Burt. N.T., Jan. 31, 2024, at 24-32. Dr. Burt's license to prescribe controlled substances had been revoked for four months in 2010 allegedly because he had prescribed drugs via the internet outside a bona fide doctor-patient relationship. The suspensions of his license to prescribe did not impact his license to practice medicine. The trial court allowed the cross-examination on the lapsed license.

There was a two-day trial, and Dillon stipulated that he was negligent. The trial court summarized the facts as follows:

> The Accident
>
> Angus hired a Lyft on January 24, 2020, which was hit by Dillon. The collision pushed the front of the Lyft into the back of another car—causing a double impact.
>
> Plaintiff's Emergency Room Visits After the Accident
>
> The following day, on January 25, 2020, Angus went to the hospital and complained about mild neck and back pain. The ER doctors recorded her "indication" as "neck pain" and ordered a CT of her neck. They did not order any diagnostic tests for her back. Angus received an injection in her neck within a week of this emergency room visit by a provider she had been seeing for a 2018 injury.
>
> Angus went back to the hospital on January 31st. She complained of back, shoulder and arm pain. The doctors took X-rays of her shoulder and wrist. They did not diagnose or treat for back pain.
>
> Additional and Varied Treatment After the Accident
>
> Angus sought treatment for her back pain from Heather M. Akladios, Doctor of [Chiropractic]. Dr. Akladios worked at Advantage Chiropractic & Rehabilitation, P.C. (Advantage Chiropractic). Dr. Akladios gave her "stem, the heat and things like that."

Dr. Akladios left Advantage Chiropractic and Joseph Kwon, Doctor of [Chiropractic], took over [Angus's] care. His treatment gave her temporary relief from sharp pain shooting down her back into her feet.

Dr. Kwon referred Angus to a Dr. Michelle Holding for an EMG and to a Dr. Schwartz for an MRI.

Between April 2020 and August 2020, Angus treated ten times at Advantage Chiropractic for the 2020 Lyft accident. Angus was discharged from treatment in late October 2020.

Prior Injuries, Ongoing Treatment, and Overlapping Restrictions

Angus had two prior accidents. Angus hurt her right shoulder and right wrist at work in 2016. Angus then hurt her left shoulder, neck and hand at work in October 2018. Angus treated these injuries at Advanced Orthopedics and Neurosurgery and Holy Redeemer. Angus treated for her 2018 injuries for several years, including in 2020 after the January 2020 Lyft accident. She treated forty-five times at Holy Redeemer between April 2020 and August 2020 alone.

The 2020 Lyft accident restricted [Angus's] activity in ways that mirrored restrictions from her 2016 and 2018 accidents. Angus had trouble lifting and doing laundry after she damaged her wrist in 2016 and her neck and shoulder in 2018. She also had trouble lifting and doing laundry after the Lyft accident. Angus had surgery to fix her wrist after the Lyft accident, and continued physical therapy for her 2018 accident well into 2020. Her restrictions from her two prior accidents overlapped and mirrored her restrictions from the early 2020 accident.

Treatment by Dr. Burt for Lyft Accident

After [Angus's] EMG test and diagnosis by Dr. Holding and MRI and diagnosis by Dr. Schwarz, Angus was seen by Dr. Clifton Burt. Dr. Burt practices physical rehabilitation and interventional pain management but is not board certified.

Dr. Burt saw Angus on October 7, 2020. She complained of back pain and numbness and tingling in her feet. Dr. Burt performed a "straight leg test" that indicated irritation to the

nerve root. He recommended an ablation to block the nerve even though Angus reported no acute distress, scored five out of five motor strength, and two out of two for sensation.

Dr. Burt performed the nerve root block in January 2021. Angus reported relief of 40%. Dr. Burt acknowledged he consistently reported the exact same results for other patients he treated. The nerve ablation procedure was the second and last time Angus saw Dr. Burt.

[Angus's] Medical Experts On Causation

Two of [Angus's] treating physicians served as her medical experts at trial. Dr. Holding — the doctor who performed the EMG test — testified in-person. She had practiced medicine since 1994. She graduated from Cornell University, then Hahnemann University Medical School. She is double-board certified in (a) physical medicine and rehabilitation and (b) pain medicine. Her practice includes performing and interpreting EMGs. She also reviews but does not write MRI studies.

Dr. Holding examined Angus on August 3, 2020, on Dr. Kwon's referral. She took [Angus's] history and conducted a physical exam. Angus told her she (Angus) did not have back pain before the January 24, 2020, Lyft accident. The physical exam revealed "decreased sensation" and injury to [Angus's] lower back. Dr. Holding then reviewed [Angus's] MRI report and performed an EMG study. The EMG revealed a nerve root injury known as radiculopathy at the L4-L5 discs. Dr. Holding also read the EMG to show neither an old nor new injury at the time of the test. The EMG and [Angus's] subjective complaints caused Dr. Holding to conclude to a reasonable degree of medical certainty that [Angus's] L4-L5 disc was the source of her pain and that the Lyft accident had injured this area of her spine.

Dr. Holding conceded, however, that the MRI showed "disc desiccation." She described desiccation as "kind of like an [aging] process." It is "just something that happens when you get older." Dr. Holding acknowledged Angus "had desiccation" at the precise location of [Angus's] back injury. Dr. Holding also conceded Angus had disc "degeneration." She testified "everybody that's 50 years old, which is what Ms. Angus is, is going to have some form of degeneration." Dr. Holding explained "degeneration" is injury from "wear

and tear." Dr. Holding nonetheless dismissed disc desiccation and degeneration as the cause of [Angus's] pain because the EMG—in Dr. Holding's view—showed the nerve was damaged at the approximate time of the Lyft accident.

Dr. Burt served as a second medical expert for Angus at trial via deposition testimony. He opined that Angus suffered from ongoing back pain that prevented her from engaging in a full spectrum of normal activities. And he concluded with a reasonable degree of medical certainty that her back injury stemmed from the January 2020 car accident. Dr. Burt expressed these judgments in a report dated August 2023 even though: (1) he had not seen Angus since her ablation procedure in January 2021, two-and-a-half years before, (2) he reviewed a medical report from another doctor who had evaluated Angus in September 2020 for neck pain and radiculopathy and had noted Angus did not complain about her lumbar spine and the doctor had made no abnormal findings of her lumber spine, (3) he knew Angus had neck pain from a 2018 accident, (4) he could not specify which activities her back pain restricted, (5) he could not testify about her current condition, (6) he had not reviewed the medical records from [Angus's] second visit to the ER on January 31, 2020, and did not know about the diagnostic tests of her shoulder and hand that day, and (7) he had not reviewed [Angus's] MRI film (he just reviewed the report).

Over objection by plaintiff's counsel, Dr. Burt was asked about the revocation of his license to prescribe controlled substances in 2008. Dr. Burt acknowledged part of his registration to distribute medications had been revoked for approximately four months. When counsel asked whether his license had been revoked because he had prescribed controlled substances via the internet based on online questions, unverified medical records, and telephone consultations, Dr. Burt characterized this explanation as only "somewhat" correct. He testified New Jersey revoked his license only because Virginia had, and Virginia only revoked his license because they could not locate him. [Dr.] Burt also asserted he had not been able to defend himself. On re-direct, [Dr.] Burt made clear his license to practice medicine had never been revoked, his license to prescribe had been re-activated since 2010, and he had not been charged criminally. No extrinsic evidence was offered.

Defense Expert on Causation

The defense called Lee Harris — a triple board-certified medical doctor who specializes in neurology and relevant sub-specialties — to opine on causation. Dr. Harris received his medical degree from the Albert Einstein College of Medicine in New York in 1984 and completed his residency at Columbia Presbyterian Medical Center in New York in 1987. He remained at Columbia to complete a fellowship in clinical neurophysiology, which included EMG diagnostics for nerve and muscle damage. Dr. Harris is licensed to practice medicine in Pennsylvania, and has been board certified in neurology since 1989. He also holds board certifications in clinical neurophysiology and electrodiagnostic medicine. Finally, Dr. Harris served as a professor of neurology at Temple University School of Medicine for the first 30 years of his career. He has continuously maintained a neurology practice in Abington, PA, since 1989, and routinely sees patients for neck and back injuries.

Dr. Harris saw Angus on December 28, 2021, for an independent medical review. He conducted a physical examination, took her medical history, and reviewed her medical records.

Dr. Harris discerned Angus had a diminished range of motion in her lower back, but no "appreciable muscle spasm that [he] could detect." A straight leg raising test revealed "no evidence of a herniated disc pressing on the spinal nerve." Dr. Harris reviewed Dr. Holding's EMG report. Her EMG report stated Angus had lumbar radiculopathy. The physical examination Dr. Harris performed, however, did not "correlate with any clinical findings of radiculopathy" and did not support Dr. Holding's conclusion.

Dr. Harris reviewed the MRI film and found pre-existing disc degeneration (consistent with Dr. Holding's concession). He concluded Angus did not suffer "any injury to the discs in her lower back or any radiculopathy or nerve damage related to this accident." He could not locate any "abnormal findings that [he] could attribute to the [2020] accident."

Trial Ct. Op. at 3-9 (citations omitted; underline added).

Angus objected to a jury instruction regarding her obligation to mitigate damages. The trial court gave the instruction. The jury found Dillon's negligence had not caused Angus's back injury. Angus filed a post-trial motion, which the court denied. The court entered judgment in favor of Dillon and against Angus. Angus appealed.

Angus raises the following issues:

I. Whether the trial court committed reversible error by denying Ms. Angus's motion *in limine* and permitting evidence of her prior work-related injuries and treatment, where there was no connection between the earlier and present injuries.

II. Whether the trial court committed reversible error by permitting testimony and evidence that Ms. Angus's causation expert's license to prescribe medication was temporarily revoked for four months approximately thirteen years ago.

III. Whether the trial court committed reversible error by instructing the jury about the mitigation of damages, where the record is void of evidence satisfying the elements of that particular legal doctrine.

Angus's Br. at 4-5.

Angus's first two issues challenge the admission of evidence. The admission of evidence is subject to an abuse of discretion:

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa.Super. 2014) (*en banc*) (citations and internal quotation marks omitted). "[T]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.* at 690-91 (quoting *Winschel v. Jain*, 925 A.2d 782, 794 (Pa.Super. 2007)).

Angus first argues the trial court abused its discretion by denying her motion *in limine* to preclude evidence of prior injuries. She maintains that evidence of the prior injuries was collateral and unfairly prejudicial. She states she did not have a pre-existing back injury, and maintains that evidence of the prior injuries "suggested to the jury, without evidence to support it and by sheer speculation, that [] Angus had previously injured her back." Angus's Br. at 17. She maintains the defense expert did not testify that she exhibited or complained of back injuries prior to the accident, and no evidence connected the prior injuries to her back pain. She notes the defense expert stated the existence of the prior injuries did not have an effect on his opinion about her back. She maintains the evidence was collateral because there was no nexus between the current and previous injuries.

Angus argues that the admission of evidence of the prior injuries unfairly prejudiced her because it impacted the case's sole issue. She maintains the prior injuries were mentioned in all parts of the trial and were used to attack her credibility. She claims the defense did not seek to connect the prior injuries to the current ones, but rather used the evidence solely to impeach credibility.

She argues that at a minimum the court should have limited the admissibility of the prior injuries to testimony concerning claims about daily living activities.

Relevant evidence is admissible unless barred by a rule of evidence. Pa.R.Evid. 402. Evidence is relevant if it has "any tendency to make a fact more or less probable." Pa.R.Evid. 401. Evidence of a prior accident is admissible only if the injuries from that prior accident can be connected to those claimed in the present suit. **Papa v. Pittsburgh Penn–Ctr. Corp.**, 218 A.2d 783, 789 (Pa. 1966); **Pierchalski v. Thomas**, No. 672 WDA 2019, 2020 WL 2735554, at *5 (Pa.Super. May 26, 2020) (unpublished mem.) (citing **Papa**).

The trial court concluded it properly admitted evidence of the prior injuries. It explained that Angus's 2016 and 2018 injuries – injuries to her neck, shoulders, left hand, and right wrist – were her "chief complaints" when at the emergency room after the 2020 accident. The court found that the prior injuries "bore on the question whether the 2020 accident had caused the injuries about which she complained at the ER." Tr. Ct. Op. at 10. The court disagreed that the omission from the instant suit of a claim for damages for the neck, shoulder, or wrist injury made the prior injuries irrelevant. The court noted that Angus continued to treat for and suffer restrictions from the prior injuries through at least August 2020, which "bore on the question whether she suffered any damages from the 2020 Lyft accident." **Id.** at 10-11. It concluded that the concession that Dillon's negligence did not cause the other

- 9 -

pain supported an inference that his negligence also did not cause the back pain. *Id.* at 10.

The court did not abuse its discretion. The prior injuries were relevant to whether the accident caused Angus any injury, particularly as Angus continued to treat for the prior injuries following the accident.

Angus next claims the court abused its discretion by permitting defense counsel to question Dr. Burt about the temporary revocation of his license to prescribe. She maintains that a witness cannot be impeached through evidence of specific instances of conduct that did not result in a conviction. Angus notes that in the Rule 1925(a) opinion, the trial court found it had erred in admitting the testimony, but it concluded the error was harmless. Angus maintains that the error was prejudicial. She argues the decision undermined the credibility of one of her experts by permitting cross-examination on an irrelevant topic and diverting attention from the sole issue in the case. She notes the jury was free to believe all, part, or none of the evidence, and argues the jury, not the court, should assess Dr. Burt's credibility.

The following deposition testimony was presented at trial, over Angus's objection:

> Q. . . . you had part of your registration to distribute medications revoked in New Jersey and Virginia; is that right?
>
> A. For, approximately, four months, correct.
>
> Q. And it was revoked because you were essentially prescribing controlled substances to individuals via the

Internet based on online questions, submissions of unverified medical records, and telephone consultations?

A. That is correct somewhat.

Q. What do you mean by somewhat?

A. Well, let's go back to Jersey. New Jersey was revoked simply because the reciprocity of a case that happened in Virginia. And in Virginia, the reason that it was revoked was because I had moved to New Jersey and they couldn't find me so they went on and revoked it. They said they couldn't find me, then all of a sudden the letters and things came to my address here in Jersey. I moved in June of 2009.

Q. But the reason they were revoked is what I just read; is that correct?

A. Well, that's the reason they put down.

Q. Okay. It was found that you were prescribing medications other than a legitimate medical purpose or outside the usual course of professional practice?

A. That's the reason that they had put down without me being able to defend myself.

Trial Exh. 43, Dep. of Clifton D. Burt, at 17-18.

We agree that the trial court should not have permitted the cross-examination, but find the error harmless. "[I]n Pennsylvania a witness may not be impeached through evidence of specific instances of conduct which have not resulted in a conviction." **Petrasovits v. Kleiner**, 719 A.2d 799, 804 (Pa.Super. 1998); Pa.R.Evid. 608(b)(1) ("Except as provided in Rule 609 (relating to evidence of conviction of crime), . . . the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct[.]").

Accordingly, we agree that the trial court erred in permitting Dillon to cross-examine Dr. Burt about the suspension of his license to prescribe medications.

However, this error was harmless. "The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." **Grove v. Port Auth. of Allegheny Cnty.**, 218 A.3d 877, 888 (Pa. 2019) (quoting **Harman ex rel. Harman v. Borah**, 756 A.2d 1116, 1122 (Pa. 2000)). "Harmless error exists if the record demonstrates either . . . the error did not prejudice the defendant or the prejudice was *de minimis*[.]" **Id.** at 890 (quoting **Commonwealth v. Hairston**, 84 A.3d 657, 671 (Pa. 2014)) (alteration in **Grove**).

Here, the trial court concluded the cross-examination of Dr. Burt regarding the suspended prescription license did not prejudice Angus:

> Here, the evidence shows the relatively brief testimony about the suspension of Dr. Burt's prescription license did not prejudice Angus.
>
> • First, Angus did not rely just on Dr. Burt. She also called Dr. Holding as an independent expert on causation. Dr. Holding opined to a reasonable degree of medical certainty that the accident had injured [Angus's] L4-L5 disc and caused her back pain.
>
> • Second, Dr. Holding conceded an alternative explanation for [Angus's] back pain. She acknowledged Angus suffered from both desiccation and degeneration at the precise discs from which the pain emanated.

• Third, Dr. Holding was more qualified than Dr. Burt. She has two relevant board certifications. Dr. Burt has none. She performed the EMG diagnostic test. Dr. Burt performed no diagnostic tests and relied on Dr. Holding's report.

• Fourth, the completely independent [emergency room] physicians treated [Angus's] neck and shoulder pain but not her back. This supports an inference they did not believe the car accident had injured her lumbar spine.

• Fifth, Dr. Burt suffered withering cross-examination based on flawed methods (he had not seen Angus for two-and-a-half years when he wrote his opinion; he reviewed a medical report that showed no lumbar pain eight months after the accident; he knew Angus had neck pain from her 2018 accident and could not specify which activities the 2020 accident prevented; he had not reviewed the medical records from [Angus's] second [emergency room] visit; and he had not reviewed [Angus's] MRI film).

• Sixth and finally, the defense expert, Dr. Harris, opined—based on 30 plus years experience and three on-point board certifications—that Angus did not suffer "any injury to the discs in her lower back or any radiculopathy or nerve damage related to [the 2020] accident." He examined [Angus] at the time he developed his opinion and found no "appreciable muscle spasm." A straight leg raising test revealed "no evidence of a herniated disc pressing on the spinal nerve." He reviewed Dr. Holding's EMG report that stated Angus had lumbar radiculopathy. The physical examination Dr. Harris performed, however, did not "correlate with any clinical findings of radiculopathy" and did not support Dr. Holding's conclusion. Dr. Harris also reviewed the MRI film and found pre-existing disc degeneration (consistent with Dr. Holding's testimony). In short, Dr. Harris could not diagnose any "abnormal findings that [he] could attribute to the [2020] accident."

For all these reasons, Dr. Burt's testimony was cumulative and weak. Under the circumstances, the improperly admitted (and relatively brief) evidence about the suspension of Dr. Burt's prescription license did not prejudice the jury.

Trial Ct. Op. at 12-14 (citations omitted; some alterations in original).

The court did not err in finding the error harmless. The brief testimony about the suspension did not prejudice the jury, particularly when viewed in the context of all testimony and evidence received at trial.

In her final claim, Angus argues the court abused its discretion by instructing the jury regarding her duty to mitigate damages. Angus maintains the charge was not relevant. She claims that, contrary to Dillon's argument in support of the instruction, she never claimed she did not treat for the back pain due to COVID-19. Angus maintains she attended appointments at the direction of her doctors and therapists. She continued to see someone for her wrist during COVID, but there was no evidence that the doctor would have treated her back injuries. She further maintains the defense expert contradicted the assertion she did not mitigate her damages, as the expert stated she did not have limitations or restrictions because of the crash. Angus argues the instruction was not warranted in any event because she mitigated her damages. She claims she did not miss any therapy or diagnostic appointments for her injuries, and there was no evidence she refused to abide by her doctors' recommendations or had insufficient employment.

We review a trial court's jury instruction for an abuse of discretion. ***James v. Albert Einstein Med. Ctr.***, 170 A.3d 1156, 1163 (Pa.Super. 2017). We will uphold a jury instruction that accurately reflects the law and sufficiently guides the jury. ***Id.*** at 1164. We review the charge in its entirety and assess the relevance of the challenged charge and, if there was error, determine whether prejudiced resulted. ***Id.***

- 14 -

Angus objected to a jury instruction on mitigated damages, alleging the defense expert stated Angus did not need further care, and stated "[h]ow are you going to mitigate damages when your doctors says, you don't need any more care." N.T., Feb. 1, 2024, at 94. Angus argued that no doctor recommended more care and therefore she could not mitigate damages. *Id.* Dillon argued that Angus's counsel had stated she did not get more chiropractic care was because of the COVID pandemic,[1] but noted she continued to receive treatment for other ailments. *Id.* at 95. The trial court overruled the objection.

The trial court provided the following instruction on mitigation of damages:

> Now, a person who claims damages resulting from a wrongful act of another has a duty under the law to use reasonable diligence to mitigate her damages, that is, to avoid or minimize those damages.

> If you find the defendant[ is] liable to the plaintiff, the defendant's liable and the plaintiff has suffered damages as a result, the plaintiff may not recover for any item which she could have avoided through reasonable effort.

_____

[1] During opening statements, counsel stated:

> Now, when I say nine months, I want to be clear about something, this is COVID. Let's -- I need you to keep that in mind, okay, because this is kind of important, right. In that, this is COVID, so you are not able to get to the doctor just because you want to unless it's an emergency. So she did the best she could within the confines of what Dr. Heather and Dr. Kwon would allow her to do.

N.T., Jan. 31, 2024, at 66.

If you find the defendant proved by a preponderance of evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen her damages, you should deny her recovery for those damages that she could have avoided, had she taken advantage of that opportunity. But you're the sole judge of whether the plaintiff acted reasonably, in avoiding or minimizing her damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce her damages; however, they're not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating damages.

The defendant has the burden of proving the damages that the plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of a failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied its burden of proving that the plaintiff's conduct was not reasonable.

*Id.* at 168-69.

The court found it did not abuse its discretion when it instructed the jury that Angus had a duty to mitigate damages. It reasoned the evidence warranted the instruction, as it showed Angus had treated more frequently for her 2018 injuries than for injuries related to the 2020 accident. It pointed to evidence that between April and August 2020, she treated 10 times for the accident injuries and 45 times for the 2018 injuries, and did not seek treatment for her back after January 2021. It concluded the "evidence supported an inference of no reasonable attempt to mitigate." Trial Ct. Op. at 11.

The court did not abuse its discretion. The evidence supported a conclusion that, if Angus sustained damage due to the accident, additional treatment could have mitigated any damage. This is particularly true where

- 16 -

Angus testified at trial that she "currently" was in pain and "the pain is still shooting, throbbing, pounding, going down hip down feet," but stated the last treatment she received for her back pain was approximately three years before, in 2021. N.T., Jan. 31, 2024, at 96, 134.

Judgment affirmed. Appellee's Application to Dismiss/Quash Appeal Denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/29/2025